**Arvie Lou HAMBY, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary, United States Department of Health and Human Services, Defendant.**

**No. ST–C–83–67.**

United States District Court,
W.D. North Carolina,
Statesville Division.

March 25, 1985.

Charles M. Sasser, Legal Services of the Blue Ridge, Boone, N.C., for plaintiff.

Clifford C. Marshall, Asst. U.S. Atty., Asheville, N.C., for defendant.

## ORDER

McMILLAN, District Judge.

Plaintiff Arvie Lou Hamby was born on February 22, 1931, and has a fifth-grade education. In the 1970's, she completed a high school program through Wilkes Community College. On December 7, 1981, she filed an application for widows' benefits based on the earnings of her former husband, Max A. Hamby, who died fully insured on September 8, 1970. She alleges disability due to musculoskeletal and neurological impairment involving the back, legs and shoulders and to hypertension. The alleged onset date is September 12, 1978, on which date the plaintiff was in an automobile accident which aggravated her existing scoliosis of the spine and a leg weakness which had resulted from adolescent polio.

After initial administrative denials, a hearing was held on July 14, 1982, before an Administrative Law Judge (ALJ) who, on August 20, 1982, found that plaintiff had the impairments set out above but found

4. That the evidence fails to establish that the claimant had or has an impairment or impairments listed in the Secretary's regulations or that she had or has an impairment or impairments the equivalent thereof; and

5. That the claimant has failed to establish that she is precluded from engaging in any gainful activity.

Tr. 16. Entitlement to widow's insurance benefits based on disability under Section 202(e) of the Social Security Act, as amended, was therefore denied.

A final decision by the Appeals Council was issued on February 22, 1983, upholding the ALJ's decision to deny benefits. Plaintiff thereafter filed this complaint pursuant to 42 U.S.C. § 405(g) seeking review of the Secretary's decision. The parties have filed cross-motions for summary judgment.

In making his decision, the ALJ had the following evidence before him:

Plaintiff testified extensively on her own behalf at the hearing. She described severe headaches and back pains and swelling of her legs and pain in her arms and shoulders. She says she is unable to walk without the aid of a walker and cannot sit for more than fifteen minutes nor lift more than five pounds because of the back pain. The only household chores she is able to accomplish are putting clothes in the washing machine and ironing while sitting down. She attends church and handicapped organization meetings when she can get rides, and she enjoys crafts. She had to leave her last job in 1978, because of the severe pain after her accident.

Plaintiff's former supervisor testified that she made special arrangements for her to work sitting down (such as providing a chair which rolled between the tables on which her work was placed) and for her to do only hand work, but that after the 1978 accident, plaintiff could not do even that limited amount of work (Tr. 65–66).

A October 7, 1980, letter from Dr. John Bond stated that since her accident in 1978, plaintiff had had repeated examinations, injection and medications from which she had "improved at times only to regress." He stated that she had a 30% disability of the lumbar spine (Tr. 137).

Dr. Hawkins reported on December 18, 1981, that he had seen the plaintiff for hypertension and that she also had had a car accident in 1978. She had atrophy of both lower extremities, severe anxiety,

exogenous obesity and a hernia (Tr. 120–121).

A one-time consultative examination was performed by Dr. Stanley Wallace on January 12, 1982. Plaintiff complained to him of a history of pain in the shoulders, elbows, lumbar and cervical spine for 3½ years and symptoms of stiffness and pain with difficulty standing, walking, bending or lifting. She also has a history of hypertension with "vague symptoms" of dizziness and headaches. Little evidence of "serious damage."

Dr. Wallace found plaintiff's mental status to be normal. He found no muscle weakness; sensation grossly normal; knee and ankle jerk reflexes decreased bilaterally; mild atrophy of both calves and mild motor weakness of left lower extremity ($^4$/5) and moderate motor weakness of right lower extremity ($^{3+}$/5). Full range of motion of all joints except lumbar spine where there is 60° flexion and 20° extension with motion associated with pain. Impression: hypertension, arthralgias chronic low back pain and status post polio at age 13 (Tr. 122–123).

An EKG showed "left axis deviation secondary to left anterior hemiblock," "uncomplete right bundle branch block," and "possible old lateral wall myocardial infarction." X-ray of the lumbar spine showed mild osteophyte formation, severe scoliosis centered at L2. Chest x-ray showed lung fields clear, soft tissues normal but heart enlarged and kyphoscoliosis of the bony thorax (Tr. 125).

On February 18, 1982, Dr. Richard Adams, an orthopedist, reported that he had seen plaintiff for almost a year. She had complained of pain in the mid-lumbar and infrascapular areas of the back. He noted that she had marked weakness and atrophy of the right lower leg and severe dorsal and lumbar scoliosis. He was treating her with an anti-inflammatory medication. He felt that the back pain was a combination of the scoliosis and the injury from the accident in 1978. She was ambulatory with a walker with periodic swelling in her feet. Additionally, she had developed adhesive capsulitis of the left shoulder being treated with local injections. He found that "Although she requires a walker for ambulation, her upper extremities appear to be normal. I feel that perhaps sedentary work in which she uses her hands only could probably be accomplished by her" (Tr. 129).

On April 8, 1982, Dr. Adams expressed his opinion that plaintiff is "probably disabled from performing any gainful activity on a regular basis due to the difficulty [she] would have getting to and from work, as well as due to the chronic back pain [she has]" (Tr. 138).

Again, on April 22, 1982, Dr. Adams reviewed the history of plaintiff's problems and stated that the bursitis in her left shoulder, treated with an injection and medication, "has gradually improved." Last seen on April 19, 1982, plaintiff complained of more back pain and radiation of that pain into the left leg. A physical examination showed tenderness over the left iliovertebral angle and marked scoliosis with the left hip being higher than the right hip. Straight leg raising was to 75°, reflexes equal and active, right leg weak secondary to polio. Treatment consisted of an injection into the low back and advice to continue use of walker.

> In summary, this lady had a chronic problem with her back and leg due to polio, but had been functional prior to an auto accident in 1978, which resulted in a worsening of her condition of her back, but no overall change in her neurological status. It is my opinion that she has severe limitations in function secondary to her back and secondary to weakness in the right leg.

Tr. 140.

The rest of the file evidence includes letters from plaintiff's former co-workers, pastors and friends supporting her claim for benefits and corroborating her testimony as to her pain and her difficulty "getting around." Diane K. Harper, Coordinator of Special Needs at Wilkes Community College discussed her work with plaintiff and stated that

In my opinion, Mrs. Hamby would have a very difficult time trying to maintain any employment. The pain which she suffers as a result of damage to her back and lower extremities would prohibit any kind of work which requires constant sitting, yet it would be virtually impossible for her to work at a job in any other position.

Tr. 142.

The Social Security Act provides that a widow is eligible for disability benefits if her impairments are "of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity." 42 U.S.C. § 423(d)(2)(B). The Secretary's regulations governing the medical criteria for widows' disability determinations are set forth in the Listing of Impairments, 20 C.F.R., Subpart B, Appendix 1. A widow will be considered disabled, and unable to engage in any gainful activity, if her impairment is found in the Listing of Impairments, or if her condition is the medical equivalent of a listed impairment. 20 C.F.R. § 404.1578(a). The Secretary must also consider whether the combination of several impairments which do not meet the specific criteria of the listed impairments constitutes the medical equivalent of a listed impairment. *Id.*

The ALJ found that plaintiff's impairments do not meet the listings in Appendix 1. At the hearing, Dr. James C. Bruce, an internist and medical advisor for the Secretary, testified generally that plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and specifically that plaintiff's back problem did not meet the listing at Section 1.05(C), disorders of the spine, because there was no evidence of sensory or reflex loss (Tr. 75, 79) as required by that listing. The ALJ noted the requirements of, but did not make specific findings as to, listings at Section 1.03 (arthritis of major weight-bearing joint) and Section 1.04 (arthritis of one major joint in each of the upper extremities).

■ The ALJ's finding that plaintiff's impairments do not equal a listing is not supported by substantial evidence and must be reversed. The "core" of the medical equivalence test is whether the claimant is "capable of any gainful activity." *Paris v. Schweiker*, 674 F.2d 707, 710 (8th Cir. 1982). Any other interpretation would fly in the face of Congress' requirement that disability benefits be paid to widows (of wage earners) who have impairments severe enough to "preclude an individual from engaging in any gainful activity."

■ The determination of "medical equivalence" must include consideration of laboratory findings, medically observable facts and the claimant's subjective description of impairments. 20 C.F.R. § 404.1528–9. In addition, there is no exemption from the requirement that the opinion of the treating physician be given "great weight" and must not be disregarded in the absence of "persuasive contradictory evidence." *Mitchell v. Schweiker*, 699 F.2d 185 (4th Cir.1983). In fact, where vocational, age and educational factors may not be considered, such as in this case, the doctor's opinion as to the disabling effects of the impairments is all the more vital.

■ The ALJ failed even to mention plaintiff's treating physician's opinion that plaintiff is disabled from performing any gainful activity because of her chronic low back pain and her difficulty moving and walking. His opinion that she has "severe limitations" is supported by specific findings as to the existence and causes of the damage to her back and lower extremities.

Plaintiff did not just quit work at the time of her accident which changed her already difficult physical condition (due to childhood polio) into a much more painful and limiting condition. Instead, she attempted to return to her job which from all descriptions may have more closely met the definition of "sheltered work" than "gainful activity" in terms of the many modifications made on her behalf by her employer. Because of her increased pain and even further limited movement, she was unable

to do even that work, and her employer was forced to discharge her.

While not all of the evidence of record shows that plaintiff's impairments meet specific listings in Appendix 1, there is no evidence in the record that plaintiff can do any gainful activity. Plaintiff can do less than what is required in order to be able to do "sedentary work" as defined by the Secretary at 20 C.F.R. § 404.1567(a); she is not able to sit continuously for the periods of time required to do that work; she is not able to stand without great effort and use of a walker; and she is not able to carry *any* objects while walking because of her need to use a walker at all times.

■ It may well be true that widows do not have the same right as wage earners to have vocational, age and educational factors considered if their impairments are not found to meet or equal a listing. Nevertheless, the Secretary may not impose a harsher burden on widows who *have* shown, *without* reliance on vocational, age and educational factors, that they can do no gainful activity.

■ The evidence shows that plaintiff's impairments may not meet a listing of "disorders of the spine" because of the lack of evidence of sensory and reflex problems. However, plaintiff has the additional impairments of hypertension, disuse (for all vocationally-relevant purposes) of her lower extremities, and bursitis and tendinitis and the resulting pain in her shoulders. The ALJ's finding that these impairments, in combination do not "equal" a listing is not supported by substantial evidence. The laboratory and clinical findings, the treating physician's opinion and plaintiff's subjective testimony, overwhelmingly supported by former co-workers, friends and ministers, show that plaintiff's impairments are of such severity as to preclude any gainful activity, and that plaintiff, therefore, is disabled.

IT IS THEREFORE ORDERED, that the final decision of the Secretary denying disability benefits is REVERSED.