Geneva HONEYSUCKER, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.

No. 85 C 5288.

United States District Court, N.D. Illinois, E.D.

Dec. 2, 1986.

Frederick J. Daley, Chicago, Ill., for plaintiff.

Mary S. Rigdon, Asst. U.S. Atty., Civil Div., U.S. Dept. of Justice, Donna Morros Weinstein, Regional Atty., Dept. of Health and Human Services, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

On April 19, 1983, plaintiff Geneva Honeysucker filed for disability insurance benefits pursuant to Title II, §§ 216(i) and 223 of the Social Security Act (Act), 42 U.S.C. §§ 416(i) and 423. She subsequently filed for supplemental security income (SSI) pursuant to Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff's applications were denied initially (R. 123–125, 126–

128) and on reconsideration (R. 133–134, 135–137). A hearing was held before an administrative law judge (ALJ) on November 6, 1984. The ALJ denied plaintiff disability benefits (R. 8–9). That decision became the final decision of the Secretary of Health and Human Services when the Appeals Council approved it on May 14, 1985 (R. 3). Plaintiff appeals that decision. This court has jurisdiction over plaintiff's appeal pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g).

The record shows that plaintiff was born on May 11, 1937. She is currently 49 years old, 5'2" tall and weighs 239 pounds (R. 72). Plaintiff has an eighth grade education (R. 58) and worked as a nurse's aide for eleven years (R. 130, 143). Plaintiff was hospitalized August 9–15, 1982, because of vomiting, elevated blood pressure and epigastric pain (R. 156–164). She was diagnosed as suffering from hypertension, obesity, dysmenorrhea and hypokalemia (R. 156–164). Plaintiff was again hospitalized March 6–9, 1983, due to abdominal pain (R. 165–171) and April 19–23, 1984, for hypertension (R. 192–194).

Plaintiff based her application for disability benefits only on high blood pressure and diabetes (R. 106). She alleged that as a result of these impairments she has been unable to work since December 1982 (R. 106). The record also contains medical evidence that she has arthritis in her knees, ankles and spine (R. 185).

## DISCUSSION

This court's review of the Secretary's decision is limited to a determination of whether there is substantial evidence in the record as a whole to support the decision. *Carver v. Harris,* 634 F.2d 363, 364 (7th Cir.1980). Thus this court must review the entire record in determining whether the finding of ineligibility is supported by substantial evidence. 42 U.S.C. § 405(g). *Houston v. Secretary of Health, Education and Welfare,* 736 F.2d 365, 366 (6th Cir.1984). If the decision is supported by substantial evidence, it is conclusive, 42

U.S.C. § 405(g), unless there has been an error of law. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

In order for plaintiff to be entitled to the requested benefits she must be found to be "disabled." The Act defines "disability" as the inability to engage in any substantial gainful activity due to physical or mental impairment(s) which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A).

The Social Security Administration has promulgated regulations prescribing a sequential inquiry to be followed in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)–(f) and 416.920(a)–(f). The Seventh Circuit has described this inquiry as follows:

> The first inquiry under the sequence concerns whether a claimant is currently engaged in substantial gainful employment. If it is found that he is, the claim is denied without reference to the other steps in the sequence. If he is not, the second inquiry is whether the claimant has a "severe" impairment. If he does not, the claim is denied. If a severe impairment is present, the third inquiry is whether such impairment meets or equals one of the impairments listed under Appendix I of Subpart P of the Administrative Regulations No. 4. If it does, the claim is approved. If it does not, the fourth inquiry is whether the claimant's impairments prevent him from performing his past relevant work. If he is found to be capable of returning to his past relevant work, the claim is denied. If he is not found to be so capable, the fifth and final inquiry is whether claimant is able to perform other forms of substantial gainful activity, considering his age, education and prior work experience. If he is not, the claim is approved.

*Cannon v. Harris,* 651 F.2d 513, 517 (7th Cir.1981).

This case presents a controversy regarding steps 3 and 5 of the five-step inquiry. Plaintiff argues that the ALJ erred in failing to find that plaintiff's combined impairments equal a listed impairment under the Act (R. 16–18) and in finding that plaintiff has the residual functional capacity to perform light work (R. 18). Thus plaintiff requests this court to reverse the Secretary's decision denying plaintiff benefits, or in the alternative to remand the case back to the ALJ for rehearing.

### 1. Step 3 (Listed Impairment)

Because the five-step inquiry is sequential, we first address whether the ALJ's determination that plaintiff does not suffer from a listed impairment is supported by substantial evidence. Under 20 C.F.R. Part 404, Subpart P, Appendix 1, § 10.10, a person is disabled due to obesity if she meets the weight requirements of Table II and also suffers from one of the following:

A. History of pain and limitation of motion in any weight bearing joint or spine (on physical examination) associated with x–ray evidence of arthritis in a weight bearing joint or spine; OR

B. Hypertension with diastolic blood pressure persistently in excess of 100 mm Hg measured with appropriate size cuff; OR

C. History of congestive heart failure manifested by past evidence of vascular congestion such as hepatomegaly, peripheral or pulmonary edema; OR

D. Chronic venous insufficiency with superficial varicosities in a lower extremity with pain on weight bearing and persistent edema; OR

E. Respiratory disease with total forced vital capacity equal to or less than 2.0 L. or a level of hypoxemia at rest equal to or less than the values of the following table:

(Tables omitted)

Table II requires that a woman of plaintiff's height, 5'2", weigh 242 pounds. Plaintiff falls just three pounds short of this requirement. Thus, as defendant ar-

gues, plaintiff does not meet a listed impairment under the Act.

### a. persistent hypertension

However, the ALJ also found that plaintiff's diastolic blood pressure is not "persistently" above 100 mm. Hg (R. 18). The record shows ten readings of plaintiff's blood pressure. During her hospitalization in August 1982 six readings of plaintiff's blood pressure apparently were taken. The readings were as follows: 180/110, 200/110, 200/120, 160/94, 140/90, 130/90. In March 1983 plaintiff's blood pressure was measured at 140/80. The reading for June 1983 was 206/112, and that for August 1983 was 150/110. The final reading shown in the record was in April of 1984. At this time plaintiff's blood pressure was measured at 180/110. Thus, of plaintiff's last ten readings, six were over 100 mm. Hg, including the last three, and of the other four, three were taken during the 1982 hospitalization.

The ALJ's determination that plaintiff's high blood pressure is not persistent within the meaning of the regulations is erroneous. The term "persistent" is not defined in § 10.10. However, in the ordinary common understanding of the word in English something need not be present every single minute to be persistent. If such a meaning were intended, the word "constant" could have been used to more clearly express such an intent.

■ We think "persistent" refers to an impairment which stubbornly recurs despite efforts to treat or control it. *See Stidman v. Heckler*, No. 83 C 9411, slip op. at n. 4 (N.D.Ill.Sept. 10, 1984) [Available on WESTLAW, DCTU database]; *cf. Johnson v. Califano*, 572 F.2d 186 (8th Cir.1978) (occasional control of hypertension does not keep it from meeting disability standard). Examination of § 12.03 of Appendix 1, in the listing for mental impairments, supports this approach. A psychotic symptom is "persistent" for purposes of the mental impairments regulation when it is "either continuous or intermittent." *See Dennis v. Heckler*, 756 F.2d 971, 975 (3d Cir.1985) (periodic remission of psychotic symptoms

does not keep claimant from meeting a listed impairment). Plaintiff need not demonstrate blood pressure in excess of 100 mm. Hg on each and every occasion it was measured. Having high blood pressure on six of ten occasions is "persistent." Plaintiff's high blood pressure is "persistent" within the meaning of the regulation.

### b. equivalence to a listed impairment

The ALJ also found that her impairment does not equal a listed impairment, and that not even in combination are her impairments medically equivalent to a listing. Both of those findings are troubling in light of an ALJ's responsibilities as set out in case law. First, the ALJ has a responsibility to the reviewing court to convey not just his conclusions but also some idea of how he reached them, so that the court can give his decision a meaningful review. In particular, he must give some minimal articulation of the reasoning by which he reached a conclusion, and share with us the specific findings which support that reasoning. *Garfield v. Schweiker*, 732 F.2d 605, 609 (7th Cir.1984); *Zblewski v. Schweiker*, 732 F.2d 75, 78–79 (7th Cir.1984). That principle applies as much at step 3 as at any other step. *Roy v. Secretary*, 512 F.Supp. 1245, 1254 (C.D.Ill.1981). *See Knipe v. Heckler*, 755 F.2d 141, 146 (10th Cir.1985) (difficulty of review without ALJ's findings and reasoning). Here the ALJ's decision treats step 3 with only the conclusory statement that plaintiff's impairments do not equal a listed impairment either singly or in combination.

■ The ALJ also has a responsibility to make medical findings on the basis of the opinions of medical experts. An ALJ cannot make medical evaluations or substitute his own interpretations of medical data for that of experts. *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir.1985); *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir.1982). The question of whether a claimant's impairment is equivalent to a listing, even though it does not precisely match that listing, is a medical question. At least where the evidence fairly raises the ques-

tion, a medical expert should evaluate it. *Jennings v. Heckler*, 770 F.2d 747, 748 (8th Cir.1985); *Hamby v. Heckler*, 607 F.Supp. 331, 334 (W.D.N.C.1985). Here, plaintiff has persistent high blood pressure, and is only three pounds short of the weight at which women of her height with persistent high blood pressure are considered disabled without further inquiry. The evidence thus fairly raises the question of whether those three pounds make a crucial difference. The ALJ apparently decided that they do, without benefit of an expert opinion discussing the question. That conclusion does not appear to be supported by substantial evidence. *Cf. Jennings*, 770 F.2d at 748.

### c. cumulative effect of multiple impairments

Moreover, even if plaintiff's obesity and high blood pressure do not medically equal the listing, they are not her only impairments. Where a claimant has multiple impairments, an ALJ also has a responsibility to address plaintiff's impairments in combination, considering their cumulative effect, in determining if she is disabled. Social Security Disability Benefits Reform Act of 1984, § 4(a)(1) (amending § 223(d)(2)); *Johnson v. Heckler*, 769 F.2d 1202, 1213 (7th Cir.1985); *De Loatche v. Heckler*, 715 F.2d 148, 150 (4th Cir.1983). Under the regulations, a claimant with more than one impairment may have a combination of impairments, the total effect of which is medically equivalent to a listed impairment, even though she cannot exactly match the listing for any one. 20 C.F.R. §§ 404.-1520(d), 416.920(d); *Fox v. Heckler*, 776 F.2d 738, 740 (7th Cir.1985); *Paris v. Schweiker*, 674 F.2d 707, 709 (8th Cir.1982). This is especially true where one single impairment is close to meeting the listing. *Helms v. Heckler*, 572 F.Supp. 259, 262 (W.D.N.C.1983). Even 200 pounds on a 5′4″ woman is significant obesity when present with a related impairment. *Scott v. Heckler*, 770 F.2d 482, 486 (5th Cir.1985). Mrs. Honeysucker, at 5′2″, weighs 239 pounds.

The regulation recognizes that both high blood pressure and arthritis are significantly related to obesity. Section 10.10 provides that a woman of plaintiff's height is disabled if she weighs 242 pounds and also suffers from either persistent high blood pressure or arthritis in a weight-bearing joint. Since the presence of two of those three impairments at the listed level of severity is disabling, logically the presence of all three, even though each one does not quite meet the listed level, could be equally disabling. Geneva Honeysucker is only three pounds less than the 242 pounds required under the Act. Her blood pressure has been elevated beyond 100 mm. Hg on a number of occasions. Moreover, plaintiff testified to having arthritis (R. 67–69), dizzy spells (R. 86), and difficulty moving (R. 71). She also suffers from diabetes (R. 172–180). However, the ALJ found that her impairments in combination were not medically equivalent to a listed impairment.

■ The same principles for an ALJ's decision discussed above apply when the question is the cumulative effect of multiple impairments. An ALJ must specifically set out his reasons for his conclusion and the findings which support that reasoning. *Ward v. Heckler*, 622 F.Supp. 462, 465 (N.D.Ill.1985). The ALJ did not make the specific findings required by law. His statements that plaintiff does not weigh 242 pounds, and that her blood pressure is not persistently above 100 mm. Hg (R. 18), are statements about her impairments individually, not about their combined effect.

■ Further, the question of the combined effect of impairments as equivalent to a listing, like equivalence itself, is a medical question. *Hamby*, 607 F.Supp. at 335. Where the evidence the claimant submits fairly raises it, a medical expert should evaluate the combined effect of the claimant's impairments. *Fox*, 776 F.2d at 740–742. In the present case, however, no one physician considered claimant's obesity, high blood pressure and arthritis in combination. Thus the effect of these three impairments in combination was not addressed by expert opinion. Accordingly,

the ALJ's determination that plaintiff's combined impairments do not equal a listed one was not based on expert opinion.

If the evidence the ALJ needs to make a decision is lacking, he has a responsibility to adequately develop the record. The United States Supreme Court has recognized that in social security cases the ALJ acts not only as an adjudicator but also is charged with developing the facts. *Richardson*, 402 U.S. at 410, 91 S.Ct. at 1431. Thus an ALJ has an affirmative duty to develop an adequate record at trial. *Milton v. Schweiker*, 669 F.2d 554 (8th Cir. 1982).

This is particularly so when evidence suggests that the claimant has another relevant impairment that could contribute to the cumulative effect of the impairments. *Jennings*, 770 F.2d at 748. As previously stated, arthritis in a weight-bearing joint is significantly related to obesity, according to the regulation. Section 10.10 lists arthritis in a weight-supporting joint as one alternative, like hypertension, that when combined with obesity renders the claimant disabled. In this case, plaintiff's physician, Dr. Patel, indicated that plaintiff suffers from arthritis of the knees, ankles and lumbar spine (R. 185). Since the knees, ankles and spine are weight-bearing joints, evidence was submitted at trial which indicated that plaintiff has another relevant impairment which could contribute to the cumulative effect. Thus, the ALJ had a duty to develop that evidence.

At the hearing it was discovered that the only medical evidence regarding plaintiff's arthritis was a set of X-rays taken of her knees which had not been submitted. The ALJ specifically expressed a need to review the X-rays before reaching his decision (R. 99). In fact, the ALJ brought up the possibility of ordering a consultative examination of plaintiff in order to get more medical information, but found that the examination would not be necessary if the X-rays were available (R. 99). The record was held open for fourteen days so that plaintiff could obtain and submit into evidence the X-rays of her knees (R. 99). When

plaintiff was unable to obtain the X-rays, her attorney wrote the ALJ requesting that a consultative examination be performed (R. 198). This request was denied. In justifying his decision, the ALJ stated that he did not consider a consultative examination necessary, given his assessment of plaintiff's file (R. 17), and noted that he assumed the X-rays do not show anything significant (R. 17).

Under the Act, the ALJ had the authority to order a consultative examination in the present case because the medical record is inadequate. 20 C.F.R. §§ 416.917 and 404.1517. The ALJ also had the power to subpoena the X-rays. 20 C.F.R. § 404.-950(d)(1). Instead, the ALJ chose to rely on his own observations and assessment of the evidence, apparently on the basis of his personal reaction to claimant (R. 17). Yet an ALJ may not make his own diagnosis of a claimant. *Rousey*, 771 F.2d at 1069; *Favia v. Heckler*, No. 84–1715, slip op. (N.D. Ill.Nov. 21, 1984) [Available on WESTLAW, DCTU database]. The ALJ cannot substitute his personal reaction for the evidence or expert testimony. *Gilliland v. Heckler*, 786 F.2d 178 (3d Cir.1986). This is particularly true where the effects of arthritis are in question. *Whitney*, 695 F.2d at 788.

█ Therefore, the case must be remanded for additional findings. The X-rays must be obtained or retaken in the event that they cannot be obtained, to determine whether plaintiff does in fact suffer from arthritis in a weight-bearing joint. Also, a consultative exam must be performed to consider (1) whether a 239–pound woman with persistent hypertension has an impairment equal to that of a woman of the same height three pounds heavier; (2) whether a 239–pound woman with persistent hypertension and the demonstrated degree of arthritis is medically as disabled as a 242–pound woman with persistent hypertension alone.

## 2. Step 5 (Residual functional capacity)

Additionally, it is necessary to discuss the ALJ's step 5 finding that plaintiff is able to perform light work within the meaning of the Act. Such a discussion is

relevant since on remand the ALJ may again find that plaintiff does not meet or equal a listed impairment and will again have to proceed to the fifth and final inquiry.

At the hearing plaintiff testified as to her condition. She stated that she falls weekly due to a weak left leg which is a result of the polio she had as a child (R. 65). She claimed to have dizzy spells as a result of her high blood pressure (R. 86). Plaintiff testified that the arthritis in her hands causes her hands to swell up so that she can lift no more than a tissue or newspaper (R. 67–69), and that she is unable to lift her arms above shoulder level due to the arthritis in her arms (R. 75). Plaintiff also testified that she cannot sit for any period of time because it is painful, and that she cannot walk any distance because her leg swells up when standing (R. 84). Because of these impairments, plaintiff stated that she spends much of the day watching television (R. 78). She is unable to do housework or go grocery shopping (R. 77).

The medical report of Dr. Shepard was also received as evidence during the hearing (R. 172–180). Dr. Shepard examined plaintiff on June 8, 1983, at the Social Security Administration's request. Dr. Shepard reported a nine-year history of hypertension, a six-year history of diabetes mellitus, and a past history of polio in the left leg. According to Dr. Shepard, a physical examination of plaintiff showed atrophy of the left calf with swelling of the lower left leg. Plaintiff's blood pressure was 206/110 in the right arm and 206/112 in the left. Dr. Shepard also noted paralysis on the plantar flexion or dorsi flexion of the plaintiff's left foot and weakness of the upper left lower extremity.

Plaintiff's treating physician, Dr. Patel, also submitted a written report on plaintiff's condition on September 7, 1983 (R. 185). Dr. Patel reported blood pressure of 150/110 and diabetes mellitus. He further noted paralysis of the dorsi flexion and plantar flexion of plaintiff's left foot and atrophy of the left calf. In his medical assessment of ability to do work-related activities submitted on May 5, 1984, Dr. Patel found that plaintiff was unable to sit for more than one or two hours at a time due to arthritis of the knees, ankles and lumbar spine (R. 192–194). He noted that plaintiff could stand only one hour to one and one-half hours at a time, and advised against lifting and carrying, bending, pushing or pulling (R. 192–194).

Two non-treating, non-examining physicians also reviewed and submitted reports on plaintiff's condition (R. 181–184, 186–189). Dr. Grover completed a residual functional capacity assessment of plaintiff on July 7, 1983. Dr. Grover concluded that plaintiff could lift 50 pounds, frequently lift 25 pounds, stand six hours, sit six hours, and frequently climb, balance, stoop, kneel, crouch and crawl (R. 181–184). Dr. Donnelly's residual functional capacity assessment of plaintiff, completed on September 7, 1983, reached the same conclusions as that of Dr. Grover (R. 186–189).

In addressing whether plaintiff could perform any substantial gainful activity, the ALJ initially noted that plaintiff's testimony was extreme and excessive, and thus lacked credibility. An ALJ is entitled to reject a claimant's testimony provided that he set forth his reasons for doing so. To illustrate, in *Zalewski v. Heckler*, 760 F.2d 160 (7th Cir.1985), the court found that the ALJ gave an adequate articulation of his reasons for rejecting the claimant's testimony when the ALJ noted that he found the testimony lacked credibility because it was not supported by the record. The court accordingly affirmed the ALJ's denial of medical benefits. *Id.* at 167.

In the present case the ALJ specifically stated that plaintiff's testimony was not supported by the record (R. 16). Thus the ALJ did not err in failing to place greater weight on plaintiff's testimony. He sufficiently articulated his reasons for finding the testimony not credible and was entitled to reject it.

However, the opinion of the treating physician is generally entitled to considerable weight. *Whitney*, 695 F.2d at 789; *Allen v. Weinberger*, 552 F.2d 781, 786 (7th Cir.

1977). Traditionally, greater weight was given the opinion of the treating physician than was given to a medical specialist who merely reviewed the file. *Id.* Nonetheless, the Seventh Circuit has limited the preference for the opinion of the treating physician to those cases in which observation of the patient over an extended period of time is essential to an accurate understanding of the patient's condition. *Garrison v. Heckler,* 765 F.2d 710, 713 (7th Cir. 1985); *Jenkins v. Bowen,* No. 85 C 4122, slip op. at 5 (N.D.Ill. Sept. 9, 1986) [Available on WESTLAW, DCTU database].

In this case, the opinion of a physician who has had an opportunity to observe plaintiff over a period of time may add to an understanding of plaintiff's condition and thus aid in the determination of what plaintiff's capabilities truly are, but we are unwilling to find that such an opinion is essential here. The ALJ did not give Dr. Patel's opinion great weight, finding that it was not fully credible, and probably based solely on what plaintiff had told Dr. Patel (R. 17). The ALJ reasoned that there was no clinical evidence to support Dr. Patel's conclusions regarding plaintiff's impairments. Under the decisions of this circuit it was permissible for the ALJ to favor the reports of the two non-examining physicians over that of Dr. Patel, plaintiff's treating physician.

Nonetheless, the ALJ did not fully consider whether plaintiff truly has the capacity for the full range of light work. Under the Act, "light work" means work which involves "frequent lifting or carrying of objects weighing up to 10 pounds." Section 20 C.F.R. § 404.1567(b). A job is also in this category if it "requires a good deal of walking or standing." *Id.*

Once it is determined that a claimant can no longer perform her past work, the burden of proof shifts to the Secretary to show that the claimant has the residual capacity to do some other work. *Whitney,* 695 F.2d at 786. The ALJ determined at step 4 that plaintiff is unable to now work as a nurse's aide. Thus it became the burden of the Secretary to show that plaintiff can do some other type of substantial gainful activity. The medical reports of Dr. Grover and Dr. Donnelly were relied upon in finding that Ms. Honeysucker was able to perform light work within the meaning under the Act. As was previously noted, the ALJ and the Secretary were entitled to place greater weight on these reports than on that of Dr. Patel.

However, even though a claimant may be physically able to do work, that claimant is entitled to benefits if working would seriously aggravate the claimant's condition. For example, in *Stark v. Weinberger,* 497 F.2d 1092 (7th Cir.1974), the claimant recovered benefits even though she had worked for years with the impairment for which she was seeking recovery. The claimant had worked during this period because her disease had not yet been diagnosed and she was unaware that she should avoid doing the type of work required of her on her job. *Id.* at 1098. The court allowed recovery because even though the plaintiff was physically capable of doing the work, it placed her health at a greater risk, and she could not be required to work at the risk of her health. *Id.* at 1099. *See also Warmoth v. Bowen,* 798 F.2d 1109, 1111 (7th Cir.1986) (claimant with respiratory ailment not required to work in environments where respiratory irritants are present).

In this case, even though plaintiff may, according to Dr. Grover and Dr. Donnelly, be physically able to do "light work," she should not be required to do so if it would place her at severe risk to her health. Plaintiff weighs 239 pounds and suffers from persistent high blood pressure. Even though plaintiff may be physically capable of doing light work, as defined under the Act, requiring her to do so may place her at some risk of a heart attack or a stroke. It does not appear as though the ALJ considered this possibility. On remand, he should seek expert opinion on this question as well. Thus the case is remanded for a determination of the threat to Ms. Honeysucker's health presented by regular "light work."

## CONCLUSION

The decision of the Secretary is vacated. The case is remanded to the Administrative Law Judge for additional factfinding and reconsideration in light of this opinion.