**Cornell F. RICHARDSON, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 96–704–Civ–TJC.**

United States District Court, M.D. Florida, Jacksonville Division.

Aug. 3, 1998.

Order Denying Motion to Amend Oct. 20, 1998.

Sarah Bohr, Jacksonville, FL, for plaintiff.

Reginald Luster, Jacksonville, FL, for defendant.

### FINAL JUDGMENT [1]

CORRIGAN, United States Magistrate Judge.

Plaintiff, Cornell F. Richardson, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeks judicial review of the final administrative decision of the Commissioner of

---

1. The parties have consented to exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Social Security who denied plaintiff's claim for supplemental security income (SSI) and Social Security disability insurance (SSDI) benefits because he found that plaintiff retained the residual functional capacity to perform sedentary work and could perform her past work as a bilingual questionnaire clerk.

Plaintiff contends that the Commissioner erred as a matter of law (1) in refusing to consider the psychological report of Dr. Yates on the ground that it was not material; (2) in finding that she did not meet the requirements of the obesity listing; and (3) in separating the sedentary and medium aspects of her past job as a bilingual questionnaire clerk when he determined that she could perform her past relevant work. Plaintiff further asserts the Commissioner's decision is not based on substantial evidence as required by 42 U.S.C. § 405(g).

At oral argument held July 8, 1998, the Commissioner essentially conceded that remand to the Commissioner "may be appropriate" for reconsideration of plaintiff's claim for all of the reasons urged by plaintiff. The Court agrees that, for the reasons stated by the plaintiff in her memorandum (Doc. # 20, pp. 10–13), the Appeals Council erred in refusing to consider the June 7, 1995 psychological report of Dr. Yates (T.12). The Court further agrees that the Commissioner erred in separating the sedentary and medium aspects of plaintiff's job when he determined that she could perform her past relevant work (Doc. # 20, pp. 17–20). Finally, the Court agrees (and the Commissioner concedes) that the ALJ, in determining whether plaintiff met the obesity listings, used the wrong diastolic blood pressure reading (the ALJ used a diastolic blood pressure reading measurement of

110 mm. Hg when the regulations require the ALJ to apply the measurement of *100* mm. Hg), thus, at minimum, necessitating a remand for the ALJ to consider the listings issue using the correct measurement. However, plaintiff contends that rather than remand, the Court should decide, as a matter of law, that the Commissioner improperly determined that plaintiff did not meet the obesity listing and should reverse the Commissioner's decision with direction to award benefits.

Conditions contained in the "listing of impairments" are considered so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform her past relevant work or any other jobs. *Crayton v. Callahan,* 120 F.3d 1217, 1219 (11th Cir.1997); *Lester v. Chater,* 81 F.3d 821, 828 (9th Cir.1995), citing 20 C.F.R. § 404.1520(d). Claimants are conclusively disabled if their condition either meets or equals a listed impairment. *Id.*

Under 20 C.F.R. Part 404, Subpt. P, App. 1, § 9.09,[2] a person is disabled due to obesity if she meets the weight requirements of Table II and also suffers from one of five listed conditions. Pertinent to this case is the condition of "hypertension with diastolic blood pressure persistently in excess of 100 mm. Hg measured with the appropriate size cuff ..." 20 C.F.R. Part 404, Subpt. P, App. 1, § 9.09.

Table II requires a woman of plaintiff's height (61")[3] weigh *236* lbs. or more to satisfy the first part of the listing. Plaintiff's lowest weight recorded in the record was *245* lbs. in 1990 (T.125). Her weight rapidly rose during 1991 and 1992 to the range of low to mid–270s (T.121–124). By February 1994, she weighed *314* lbs. (T.218–219). She subsequently lost weight and at her hearing in late November 1993,

---

**2.** Previously § 10.10 in earlier versions of the regulations.

**3.** While the government's brief argues that there is not sufficient evidence in the record of plaintiff's height, the record does contain the undisputed testimony of plaintiff that she

is 61" tall (T.61). This is confirmed by other record evidence (Eg. T.110, T.150). The record contains no contrary evidence and the government essentially conceded plaintiff's height at oral argument.

she testified that she weighed approximately 280 lbs. (T.61). Each of these weights meets the weight requirement of an individual whose height is 61″ and there is no contention by the Commissioner that plaintiff did not meet this weight requirement for the requisite period of time to be entitled to disability benefits.

Although finding plaintiff met the height and weight requirements, the ALJ determined that plaintiff did not meet the obesity listing, finding that "[while plaintiff] may have had diastolic blood pressures measured at 110 and above, the evidence further shows that these pressures are not persistent." (T.27) (parenthetical added).

■ As conceded by the Commissioner, the ALJ mistakenly believed that the plaintiff was required to have diastolic blood pressure in excess of 110 mm. Hg on a persistent basis, rather than the 100 mm. Hg readings called for by the regulations. The question becomes whether, applying the correct 100 mm. Hg measurement to plaintiff's blood pressure readings, the Court, as a matter of law, can determine plaintiff's blood pressure "to be persistently in excess of 100 mm. Hg."

Unfortunately, the word "persistently" is not defined in the regulations. However, plaintiff need not demonstrate blood pressure in excess of 100 mm. Hg on each and every occasion blood pressure is measured. *Honeysucker v. Bowen,* 649 F.Supp. 1155, 1158 (N.D.Ill.1986) (finding that claimant who had high blood pressure six out of ten times satisfied the "persistency" requirement). The most apt dictionary definition of "persistent" is "enduring." The American Heritage Dictionary of the English Language (New College Edition 1976).

According to plaintiff and not disputed by the Commissioner, the record contains a total of 25 blood pressure readings (a compilation of these readings, provided by

plaintiff in her brief is attached to this decision as Exhibit A). Of these, 12 out of 25 are in excess of 100 mm. Hg (three more are 100 mm. Hg exactly). Some of the diastolic readings are greatly in excess of 100 mm. Hg; the highest three readings being 123, 139 and 146. More significantly, the readings in excess of 100 mm. Hg span a period from June 21, 1988 (reading 168/110) to February 13, 1995 (reading 211/146). While acknowledging that there are a number of readings between those two dates below 100, there are also a good number above 100 during this seven-year span of time.[4] If "persistent" means "enduring," the Court finds that diastolic readings in excess of 100 over a seven-year period meets the definition of "persistent."

The government suggests that plaintiff's failure to take her blood pressure medication contributed to her history of high blood pressure. While the ALJ noted and the record supports evidence that plaintiff was at times noncompliant with the taking of her blood pressure medication, the ALJ did not rely on this fact to determine that plaintiff did not meet the listings. Moreover, the record does not show a pattern of plaintiff wilfully refusing to take her medication; rather some of the non-compliance was apparently due to factors beyond plaintiff's control. Finally, the ALJ did not make the required finding that had plaintiff faithfully taken her blood pressure medication, it would have restored her ability to work. The Court's review of the entire record, including Dr. Yates' psychological report, which, by concession of the Commissioner, is due to be considered part of the record, leads the Court to conclude that the ALJ would not have been able to make such a finding in any event. Thus, the Commissioner has not demonstrated that plaintiff's failure to take prescribed medication is a basis to deny her benefits to which she is otherwise entitled by virtue

---

4. Notwithstanding that some of these blood pressure readings were taken after the 1993 hearing before the ALJ, because they were a part of the record which the ALJ had before him before rendering his April 28, 1995 decision, they are properly considered here.

of her meeting the listings. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). It is hereby

### ORDERED AND ADJUDGED:

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is reversed and this case is remanded to the Commissioner for an award of benefits consistent with this opinion.

Exhibit A

| Date Reading Taken | Reading | Transcript Cite |
|---|---|---|
| 6/21/88 | 168/110 | T. 145 |
| 7/28/89 | 160/10? | T. 144 |
| 9/22/89 | 160/108 160/100 | T. 142 |
| 4/1/91 | 180/100 160/100 | T. 138 |
| 4/3/91 | 160/80 | T. 137 |
| 3/11/93 | 134/89 | T. 135 |
| 6/1/93 | 128/66 | T. 188 |
| 8/3/93 | 179/119 164/108 | T. 186 |
| 8/5/93 | 158/102 | T. 184 |
| 10/10/93 | 143/86 168/108 | T. 182 |
| 10/28/93 | 166/139 166/89 | T. 177 |
| 10/28/93 | 139/101 | T. 167 |
| 2/17/94 | 149/96 | T. 218 |
| 4/25/94 | 177/123 | T. 191 |
| 8/18/94 | 152/95 | T. 208 |
| 10/6/94 | 125/77 | T. 219 |
| 12/15/94 | 148/96 | T. 206 |
| 2/13/95 | 210/120 | T. 198 |
| 2/13/95 | 190/120 | T. 199 |
| 2/13/95 | 211/146 | T. 204 |

## ORDER ON DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT [1]

This motion came before the Court on defendant's motion (Doc. 29) to alter or amend this Court's Final Judgment reversing the decision of the Commissioner and remanding the case to the Commissioner for an award of benefits to plaintiff. (Doc. 28). Plaintiff has filed an opposition memorandum (Doc. 33) and this motion is now ripe for review.

At issue is plaintiff's claim that she is disabled due to obesity. (Doc. 20). The Commissioner does not dispute that plaintiff meets the height and weight requirements for this condition but contends that plaintiff fails to meet any of the other five listed conditions as required for a finding of disability. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 9.09 (formerly § 10.10). The ALJ considered whether plaintiff met the requirements of the Obesity Listing and found that she did not because her diastolic blood pressure measurements were not persistently over 110 mm. Hg. (T. 27). As conceded by the Commissioner, the ALJ mistakenly applied the Regulations which require persistent blood pressure readings in excess of 100 mm. Hg, not 110 mm. Hg, as believed by the ALJ. In its Final Judgment (Doc. 28), the Court noted that although the word "persistently" is not defined in the Social Security regulations, "persistence" does not require a demonstration of blood pressure in excess of 100 mg. Hg on every occasion blood pressure is measured. *Honeysucker v. Bowen*, 649 F.Supp. 1155, 1158 (N.D.Ill.1986). The Court also considered the definition of "persistent" as "enduring," found in the American Heritage Dictionary of the English Language (New College Edition 1976). The Court then reviewed the entire record which included 25 blood pressure readings and determined that these readings were persis-

---

**1.** The parties have consented to exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

tently in excess of 100 mm. Hg. Thus, plaintiff met the Obesity Listing requirements and the Court reversed the decision of the Commissioner and remanded the case for an award of benefits without further proceedings.

Defendant contends that this case should be decided by the Commissioner who is charged under 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (1998) with determining whether an impairment warrants an award of Social Security benefits. Specifically, defendant argues that the Commissioner, and not this Court, should decide whether or not plaintiff's diastolic blood pressure measurements were "persistently" over 100 mm. Hg. Defendant alternatively argues that the record does not support the conclusion that plaintiff's blood pressure was persistently over 100 mm. Hg. Thus, defendant asks the Court to alter or amend its Final Judgment and remand the case to the Commissioner for further proceedings.[2] Plaintiff argues that it is within the authority of the Court to remand for an award of benefits, especially where the ALJ has not applied the correct legal standard and where plaintiff's claim has been mired in the Social Security system for almost six years.

■ Where the ALJ fails to apply the proper legal standard, the Court may re-

verse and remand for an award of benefits if no new evidence is needed to make a determination. *Carnes v. Sullivan,* 936 F.2d 1215, 1218 (11th Cir.1991). This is so even when the administrative proceedings are at a sequential step where the plaintiff retains the burden of proof. *Id.* In a case such as this, where there is no need for the ALJ to take additional evidence,[3] or to complete the sequential evaluation,[4] and where substantial evidence exists in the record to support a finding of disability, the Court may properly reverse and remand for an award of benefits. *Andler v. Chater,* 100 F.3d 1389, 1394 (8th Cir.1996). The Court has determined as a matter of law that plaintiff meets the requirements for the obesity listing under 20 C.F.R. Part 404, Subpt. P, App.1, § 9.09 and that substantial evidence did not support the Commissioner's contrary finding. Remanding to the ALJ would serve no useful purpose and would only further delay plaintiff's receipt of benefits. It is hereby

**ORDERED:**

Defendant's Motion to Alter or Amend the Judgment (Doc. 29) is hereby **DENIED.**

---

2. Defendant relies on *Honeysucker v. Bowen,* 649 F.Supp. 1155 (N.D.Ill.1986) and *Thigpen v. Shalala,* 1995 WL 151838 (N.D.Ill.1995), two cases dealing with a plaintiff's alleged obesity in which the courts found remand to be the proper remedy. However, unlike *Honeysucker,* whose weight fell short of the height/weight requirement, or *Thigpen,* whose diastolic readings were never over 100 mm. Hg during the period since protective filing, there is no dispute that plaintiff meets the height/weight requirements and her diastolic measurements since the date of protective filing were over 100 mm. Hg ten out of eighteen times (acknowledging that the last three readings were taken on the same date). Thus, while both *Honeysucker* and *Thigpen* required additional medical testimony to be taken regarding the issue of whether their cumulative impairments were equal to a listed impairment, no such additional evidence is needed to evaluate plaintiff's claim.

3. *Cf., Faucher v. Secretary of Health and Human Services,* 17 F.3d 171 (6th Cir.1994) (remand appropriate so that ALJ could hear vocational expert testimony in response to adequate hypothetical addressing plaintiff's emotional impairments and obesity); *Newkirk v. Shalala,* 25 F.3d 316 (6th Cir.1994) (remand for vocational expert testimony in response to hypothetical addressing plaintiff's mental problems and drowsiness). *See also, Thigpen v. Shalala,* 1995 WL 151838 (N.D.Ill. 1995) and *Honeysucker v. Bowen,* 649 F.Supp. 1155 (N.D.Ill.1986), discussed in note 2.

4. *Cf., McDaniel v. Bowen,* 800 F.2d 1026 (11th Cir.1986) (court could not usurp role of ALJ by completing sequential evaluation when ALJ had erroneously ended sequential evaluation at Step Two).