Geraldine WHITNEY, Plaintiff-Appellant,

v.

Richard S. SCHWEIKER, Secretary of Health & Human Services, Defendant-Appellee.

No. 82–1668.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 28, 1982.

Decided Dec. 21, 1982.

Daniel Galatzer, Chicago, Ill., for plaintiff-appellant.

James W. Miles, Office of Regional Counsel, Dept. of Health & Human Services, Chicago, Ill., for defendant-appellee.

Before BAUER and POSNER, Circuit Judges, and WISDOM,* Senior Circuit Judge.

WISDOM, Senior Circuit Judge.

This case is an example of how dilatory and cumbersome the administrative and judicial process can be in disposing of disability claims under the Social Security Act. The plaintiff-appellant, Geraldine Whitney, brings this suit under 42 U.S.C. § 405(g) for judicial review of a final decision of the Secretary of Health and Human Services denying her application for a period of disability and disability insurance benefits, as provided by §§ 216(i) and 223 of the Act, 42 U.S.C. §§ 416(i), 423. We hold that the Secretary's decision was not supported by substantial evidence, and reverse and remand.

At the time of her initial application for disability insurance benefits on November 3, 1978, the plaintiff was 53 years old. Asserting that she suffered from asthma and a back injury, Whitney alleged that she had been unable to return to work since March 22 of that year. Her claims were denied by the Social Security Administration on December 11, 1978, and the plaintiff appealed to an Administrative Law Judge, who also concluded, on September 6, 1979, that she was not disabled. After the case was affirmed by the Appeals Council, Whitney sought judicial review in a district court.

---

* Honorable John Minor Wisdom, Senior Circuit Judge for the United States Court of Appeals for the Fifth Circuit sitting by designation.

Unable to obtain a transcript of the administrative hearing, however, the district court remanded the case for a *de novo* determination of the plaintiff's claim. On November 13, 1980, a second hearing was held before the same ALJ. In an opinion dated February 6, 1981, he again found that Whitney was not disabled, and granted the government's motion for summary judgment denying the plaintiff's claim for disability benefits. This decision became the final decision of the Secretary when the Appeals Council adopted it on March 16, 1981. It was affirmed by the district court on March 5, 1982, and this appeal followed, nearly four years after her initial application.

## I.

A successful claimant for disability insurance benefits under 42 U.S.C. § 423(a)(1) is required to be "under a disability." That term is defined in subsection (d)(1)(A) as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." According to subsection (d)(3), a physical or mental impairment "is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Under subsection (d)(5), an "individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(1), (2), (3) & (5) (1978). *See Johnson v. Weinberger*, 525 F.2d 403 (7th Cir.1975).

A claimant under the act has the burden of proving the existence of a disability. Once an impairment of sufficient severity is demonstrated, however, which precludes the type of work previously engaged in, the burden of going forward shifts to the Secretary to prove that there is available some other kind of "substantial gainful employment" the claimant can perform. *McNeil v. Califano*, 614 F.2d 142 (7th Cir.1980); *Smith v. Secretary of Health, Education and Welfare*, 587 F.2d 857, 861 (7th Cir.1978). The plaintiff asserts that she has carried her burden in this case. She argues that, because of her established medical history of chronic asthma, arthritis and angina, her physical impairments came within the statutory definition of "disability" in May 1978, and the Secretary erred in finding to the contrary.

■ Review of the Secretary's findings is limited to a determination of whether those findings are supported by substantial evidence based on the record as a whole. *Schmoll v. Harris*, 636 F.2d 1146, 1149–50 (7th Cir.1980); *Carver v. Harris*, 634 F.2d 363, 364 (7th Cir.1980). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir.1977) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971)). The "clearly erroneous" standard specified by Fed.R.Civ.P. 52(a) for review of a trial court's findings is inapplicable because the findings under scrutiny are those of the Secretary rather than a district court. *Schmoll v. Harris*, 636 F.2d at 1146; *Brown v. Finch*, 429 F.2d 80, 82 (5th Cir. 1970). As this Court observed in *McNeil v. Califano*, 614 F.2d at 145, "We are restricted by this section [42 U.S.C. § 405(g) ] to an evaluation of the administrative decision." A court should consider the following guidelines as an aid in such an evaluation: (1) the clinical findings of treating and examining physicians; (2) the diagnoses of these physicians; (3) the subjective evidence of pain and disability as testified to by the plaintiff and as observed by others; and (4) the claimant's educational background, work history, and present age. *See Johnson v. Weinberger*, 525 F.2d at 407.

■ Our evaluation of the record as a whole convinces us that the Secretary's decision is not supported by substantial evidence. The plaintiff testified at the second administrative hearing that she was born in 1925, received a high school education, and was employed by the Western Electric Company from 1942 to 1978. Her last position with the company was as a stock maintenance clerk, a sedentary job that required her to read blueprints and order parts. Whitney states that she has been unable to work since 1978 because she suffers severe back pain and has difficulty breathing. Her pain prevents her from sitting more than two hours and walking more than one; consequently, she spends the greater part of each day lying down. She drives a car only infrequently, and rarely uses public transportation.

Whitney's testimony was corroborated at the hearing by the testimony of Dr. Jordan, her personal physician for the past twelve years, and the report of Dr. Soban, whom she visits several times a week for acupuncture treatments. Dr. Jordan stated that based upon numerous examinations and tests, he diagnosed the plaintiff as suffering from hypertrophic degenerative arthropathy in the lumbar and cervical spine, chronic cervical whiplash syndrome, arthritis in both knees, chronic asthma, traumatic myositis of the lumbar and thoracic spine, and essential hypertension. He found that the plaintiff could push and pull with both hands, but that fine manipulations were questionable. He also stated that the plaintiff's complaints of chest pains and the results of an EKG were consistent with anginal syndrome, and pointed out that temperature changes precipitated asthmatic breathing, which became more severe when the plaintiff was subjected to dust, cologne and smoke. Both Drs. Jordan and Soban concluded that Whitney could not sit or stand for six to eight hours in her present condition.

The diagnoses of other physicians and clinical evidence were also presented at the second administrative hearing. The plaintiff's medical records showed that she entered Columbus-Cuneo-Cabrini Medical Center in Chicago on October 4, 1977, complaining of shortness of breath. Chest x-rays revealed slight aortic sclerosis, but no active pulmonary disease. Whitney was diagnosed as suffering from "an acute upper respiratory infection with acute bronchial asthma". She was hospitalized for the same complaint on March 17, 1978, and although x-rays showed no abnormalities, her medical report indicated pneumonitis, asthma, hiatal hernia, and osteoarthritis in both knees. Whitney was again admitted on May 7, 1978, following an automobile accident. Her final diagnosis on this occasion showed that she suffered from acute cervical whiplash, acute lumbar and thoracic traumatic myositis, degenerative atrophy at C4, C5, and C6, chronic asthma, a sprained left shoulder, and a contusion of the left arm. An x-ray of the right hand indicated moderately severe osteoarthritis. Other x-rays revealed a hypertrophic/spur formation in the dorsal region, hypertrophic phenomena in the cervical area, and degenerative atrophy in the lumbar region. The plaintiff's physiotherapist reported that she was unable to move her arm behind her back.

No government physician examined Whitney, and no government witnesses were called at the hearing. The ALJ did have before him, however, the report of a reviewing physician for the Department of Health and Human Services which stated, in part, that the "[m]edical evidence in [the] file indicated that while the claimant does have asthma, her vent studies are normal ... [and although] there is evidence of some back problems, the claimant has minimal limitation of motion." The ALJ apparently agreed, for in denying Whitney's claim he found that "[t]he medical evidence establishes that the claimant suffers from arthritic changes of the back and knees which are not unusually severe for a person of the claimant's age and which are not

accompanied by a severe functional limitation or severe pain. The medical evidence further establishes that the claimant suffers from asthma with no significant breathing impairment except during relatively infrequent attacks or except during relatively infrequent respiratory infections."

■ This Court has held that an ALJ does not commit an impropriety when he relies on his own observations during a hearing concerning the severity of a claimant's pain. Such observations are credibility determinations and are entitled to considerable weight. *See Bibbs v. Secretary of Health, Education & Welfare,* 626 F.2d 526, 528 (7th Cir.1980) (per curiam). Nor is a physician's opinion regarding a claimant's disability binding on the Secretary. The weight given a physician's statement depends upon the extent to which it is "supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1526. *See also Allen v. Weinberger,* 552 F.2d 781, 785 (7th Cir.1977). But it is equally clear that an ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion. *Garcia v. Califano,* 463 F.Supp. 1098, 1105 (N.D.Ill.1979); *Rayborn v. Weinberger,* 398 F.Supp. 1303, 1311 (N.D.Ind.1975).

And because an Administrative Law Judge as a rule is not a doctor, he should avoid commenting on the meaning of a test or clinical x-ray when there has been no supporting expert testimony.

We are unable to find anything in the record to support the ALJ's finding that Geraldine Whitney's impairments "are not accompanied by a severe functional limitation or severe pain."[1] The expert testimony and the medical reports submitted are all to the contrary: Dr. Jordan testified that in his opinion the plaintiff was in severe pain; and for every pain that Whitney claims to have, there are either positive x-rays or other laboratory findings. Whitney's prior work required prolonged sitting and the use of her hands to write and operate a microfilm machine. We are convinced that she has proved by a preponderance of the evidence that she cannot perform her former job for an entire workday.

The Secretary argues that this case is controlled by *Cummins v. Schweiker,* 670 F.2d 81 (7th Cir.1982), in which the Court held that the mere fact that a physician happens to be a treating physician does not, in and of itself, entitle his evidence to controlling weight. Under *Cummins,* the Secretary contends, the ALJ did not err when he gave less weight to Dr. Jordan's testimo-

1. In his findings of fact, the ALJ also concluded that "[t]he medical evidence establishes that the claimant suffers from arthritic changes of the back and knees which are not unusually severe for a person of the claimant's age ..." This finding was apparently based on the following colloquy which occurred at the hearing:

> ALJ: All right, is there anything in any of the x-rays of her spine, the dorsal spine or the lumbar spine or the cervical spine to show anything other than merely degenerative arthritis?
> Dr. Jordan: And hypertrophic arthritis, yes.
> ALJ: Well, what's that, degenerative arthritis, right?
> Dr. Jordan: Lumbar spine, yes. Right.
> ALJ: Is ___ is the finding that she has anything unusual for a person her age?
> Dr. Jordan: Oh, no.
> ALJ: Okay. My question is—
> Dr. Jordan: On x-ray yes.

> ALJ: ... Beg your pardon?
> Dr. Jordan: On x-ray?
> ALJ: Yeh, right.
> Dr. Jordan: Yeh.

We believe that Dr. Jordan's testimony falls short of the substantial evidence required to sustain the Secretary's denial of disability benefits. The questions and answers are punctuated by so many interruptions that to draw any conclusion would be difficult, let alone the finding that Whitney's infirmities "are not unusually severe for a person of ... [her] age ..."

We also take issue with the ALJ's use of the adverb "merely" to describe degenerative arthritis. Such a word is highly inappropriate in light of the overwhelming medical and scientific data readily available concerning the debilitating effects of arthritis. Moreover, this Court has held that arthritis alone may entitle a claimant to disability benefits. *See Carver v. Harris,* 634 F.2d 363 (7th Cir.1980).

ny than to his own observations. Reliance on *Cummins* in this case, however, is misplaced. As we stated there:

> [The claimant] particularly complains of the ALJ's refusal to defer to the judgment of [the claimant's] personal physician. It is true that this physician had examined [the claimant] more extensively than anyone else; but as [the claimant's] personal physician he might have been leaning over backwards to support the application for disability benefits; therefore the fact that he had greater knowledge of [the claimant's] medical condition was not entitled to controlling weight.... A trier of fact is not required to ignore incentives in resolving issues of credibility.

We believe the key phrase in *Cummins,* that "a trier of fact is not required to ignore incentives in resolving issues of credibility," must be considered in conjunction with the general principle codified at 20 C.F.R. § 404.1526, that the weight accorded a physician's testimony and diagnosis depends upon the extent to which it is "supported by medically acceptable clinical and laboratory diagnostic techniques".[2] If the ALJ concludes that a treating physician's evidence is credible, therefore, he should give it controlling weight in the absence of evidence to the contrary because of the treating physician's greater familiarity with the plaintiff's conditions and circumstances. *Carter v. Schweiker,* 535 F.Supp. 195, 203–04 (S.D.Ill.1982). *See also Carver v. Harris,* 634 F.2d 363, 364 (7th Cir.1980); *Allen v. Weinberger,* 552 F.2d at 785–86. If, however, the ALJ finds that the treating physician's evidence is not credible, he is not required to give it controlling weight. Here there was no finding that Dr. Jordan's testimony was not credible, or anything in the record to indicate "that he might have

been leaning over backwards to support the application for disability benefits". The only evidence before the ALJ that supported his finding that Whitney was able to perform her former job was the report by the reviewing physician for the Department of Health and Human Services. But as this Court held in *Allen v. Weinberger* concerning the conclusions of physicians who merely review the plaintiff's medical file and perform no examinations:

> Although their reports were not inadmissible as hearsay at the hearing before the ALJ, ... the weight to be attached to the reports must be considered in light of the fact that neither physician examined the plaintiff.... Their report, "without personal examination of the claimant, deserves little weight in the overall evaluation of liability. The [medical] advisers' assessment of what other doctors find is hardly a basis for competent evaluation ..."

552 F.2d at 786 (quoting *Landess v. Weinberger,* 490 F.2d 1187, 1190 (8th Cir.1974)). *See also Carver v. Harris,* 634 F.2d at 364. Because there was little evidence contrary to the treating physician's conclusions, we hold that the ALJ erred in not according substantial weight to the medical reports and testimony of Dr. Jordan.

## II.

Examining the record as a whole, we are unable to conclude that the Secretary's decision is supported by substantial evidence. The finding that the plaintiff, Geraldine Whitney, has not demonstrated an impairment of sufficient severity which precludes her from engaging in her former work is REVERSED. The case is REMANDED for a determination of whether the plaintiff is

---

**2.** *See also,* 20 C.F.R. § 404.1527, which provides, in part:

> ... a statement by your physician that you are 'disabled' or 'unable to work' does not

mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are 'disabled'.

able to perform other jobs in the national economy.[3]

---

**3.** As we noted earlier, on remand the burden of proving whether the plaintiff can perform some other kind of "substantial gainful employment" is on the Secretary. *See McNeil v. Califano*, 614 F.2d 142 (7th Cir.1980); *Smith v. Secretary of Health, Education and Welfare*, 587 F.2d 857, 861 (7th Cir.1978). The regulations provide that any job the plaintiff may be able to perform "must exist in significant numbers in the national economy". 20 C.F.R. § 404.1561.