CHAN WAI KING, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of
the United States Department of Health
and Human Services, Defendant.

No. 90–CV–0574 (ERK).

United States District Court,
E.D. New York.

Feb. 5, 1991.

Nancy Chang, John C. Gray, Jr., Brooklyn Legal Services, Corp. B, Brooklyn, N.Y., for plaintiff.

James Catterson, Asst. U.S. Atty., U.S. Atty.'s Office, Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

KORMAN, District Judge.

Chan Wai King was born in a rural section of the Canton Province of China. The date of her birth is the source of the dispute in this action to review a final determination of the Secretary denying her application for retirement benefits. Ms. Chan asserts that she was born on October 7, 1922. She completed elementary school in 1941, at the age of 18, her studies having been interrupted by the Sino–Japanese War. Tr. at 132–33. After the war, Ms. Chan lived in Hong Kong, where she was able to find work as a teacher of dance and music. When the authorities in Hong Kong initiated an identification card requirement, Ms. Chan gave her age as 22 rather than 34. She misstated her age on the advice of her school supervisor who told her that, because of the depressed economic conditions, the influx of refugees from the mainland, and the availability of younger applicants for a physically demanding job, she would not be able to obtain employment if she stated her true age. Tr. at 135.

Ms. Chan married her husband in Hong Kong in 1963. She then emigrated with him to the United States in that same year. According to Ms. Chan, her husband told her to give the same 1934 date of birth to Immigration and Naturalization Service because it appeared on her Hong Kong identification papers and marriage certificate. Her husband believed that, if they attempted to correct her age at that time, it might impede her entry into the United States. Tr. at 20–22.

After Ms. Chan arrived in the United States, she continued to use the 1934 date of birth because of her fear of difficulties with immigration if she were to attempt to correct it. Her naturalization papers, her application for a social security number, and original union card all repeat the date derived from the Hong Kong I.D. card. In 1979, however, Ms. Chan's youngest brother returned to China. While there, he obtained an official birth certificate for Ms. Chan that stated her year of birth to be 1922. The certificate was based upon evidence provided by people residing in her native village. This document was reviewed by the United States Consul in Beijing, China, who certified that "faith and credit are due" to the acts of the Chinese ministry issuing the document. Tr. at 60.

Ms. Chan filed an application for retirement benefits on July 19, 1984. The application was denied on the ground that Ms. Chan was born in 1934 and was not old enough to be eligible. Tr. at 30. In 1986, she sought a reconsideration of this decision. A hearing was held on August 27, 1986, and Ms. Chan submitted documentary evidence in support of her claim that she was born in 1922.

On October 20, 1986, the ALJ issued a decision denying benefits to Ms. Chan because she had not provided sufficient evidence to establish the earlier birthdate. The ALJ rejected the birth certificate issued by the Peoples Republic of China and he also rejected Ms. Chan's explanation of her reasons for using a later birthdate. He concluded that Ms. Chan's naturalization papers must control the determination of her age. Tr. at 8. The ALJ's decision was upheld by the Appeals Council on January 21, 1987.

At the time of the initial hearing before the ALJ, where she was not represented by counsel, Ms. Chan did not submit medical evidence relating to her age. In an order dated March 15, 1988, the decision of the Secretary denying benefits was vacated, and the case remanded for the specific "purpose of taking such medical evidence as will assist in determining the plaintiff's true age and the weight to be given the birth certificate issued by the Republic of China." Tr. at 161. While such medical evidence would be of little assistance in resolving a discrepancy of only a few years, it was my feeling that it could be extremely useful where, as here, there was a twelve year difference. If the medical evidence indicated, with a reasonable degree of certainty, that Ms. Chan was a woman in her middle sixties rather than her early fifties, it could provide compelling evidence corroborating her testimony.

On remand, extensive medical evidence supporting Ms. Chan's claim was obtained for the first time and entered into the record. Ms. Chan provided substantial documentation from two prominent gerontologists, as well as from her treating physician and dentist.

Gilbert R. Cherrick, M.D., F.A.C.P., the Associate Director of Medicine at the Hebrew Home for the Aged, who has extensive experience in geriatric medicine, conducted a personal examination of Ms. Chan on April 18, 1988, and observed the following:

> She appears, physically, to be a woman of at least 65 years of age. This judgment is based, to some extent, on her gross somatic appearance. Objective findings which validate this assumption are:
>
> (1) She has obvious temporal rescission of the hairline and general thinning of the hair of her head.
>
> (2) Her hair is grey.
>
> (3) She has an occasional seborrheic keratosis of the skin of the upper portions of her body.
>
> (4) She is edentulous.
>
> (5) She has obvious hypertrophy of the knee joints (hypertrophic osteoarthritis).
>
> (6) She has obvious longitudinal ridging of the fingernails.
>
> (7) X-rays of her thoracolumbar spine reveal osteoarthritic changes and osteoporosis characteristic of advanced age.
>
> ... On the basis of the above-enumerated considerations, I feel, quite definitely, that ... Mrs. Chan Wai King[ ] is more than 65 years old.

Tr. 167–68. Dr. Cherrick also considered and rejected the possibility that these symptoms could be attributed to causes other than an age of at least 65. He concluded that such alternate explanations of each of the symptoms, an approach suggested by the ALJ, would do "violence to what might be termed 'good medical clinical judgement,'" and that reasoning based on explanations other than age was medically unsound. Tr. 238.

Ms. Chan also was examined by Jir S. Tsai, M.D., who is the head of the geriatric program at the Hospital for Joint Diseases, an Associate Professor of Medicine at NYU Medical Center, and a practicing gerontologist. Dr. Tsai has had extensive experience in treating geriatric patients of Chinese background, including five years of service as the head of medicine at Gouverneur Hospital, which provides services to the Chinatown community. Tr. 169. Dr. Tsai also personally examined Ms. Chan on July 7, 1988, and reported as follows:

> I observed the following clinical signs of aging on Ms. Chan:

1) mild kyphosis-resulting [sic] from osteoporosis shown on x-ray of the lumbosacral spine dated 4/19/88

2) sparse grey hair

3) senile arcus on both eyes

4) presbyopia which requires lens correction

5) wrinkles of her periorbital and perioral area

6) absence of teeth

7) several seborrheic skin changes of scalp & upper body

8) senile plague [sic] of skin

9) deformity of interphalangeal joints of both hands

10) chest x-ray dated 6/20/88 reveals calcification of costosternal cartilage

Based upon the above clinical findings and observations, I am almost certain that Ms. Chan is more than 65 years in chronological age.

Tr. 169. Dr. Tsai also rejected the ALJ's speculation as to alternate possible explanations of the symptoms, stating that such speculations were "inconsistent with the clinical and objective medical evidence of advanced age." Tr. 239. Dr. Tsai went on to affirm that his "conclusion that Mrs. Chan is more than 65 years old is based upon the totality of the clinical and objective signs of advanced age." *Id.*

Ms. Chan has also been under treatment by a physician, Dr. Lawrence Young, since 1976, and by her dentist, Dr. Albert Lyons. Dr. Young's written statement indicates that he was told by Ms. Chan upon commencement of treatment that she was born in 1922.[1] Tr. at 148. Moreover, based on his long term treatment of her, and his medical expertise in treating many individuals of a similar ethnic and regional background, Dr. Young concluded that she had physical characteristics consistent with a 1922 birthdate. Like the gerontologists, he based his opinion on skin degeneration, dental losses, spinal changes, and skeletal changes consistent with an age of 65 and inconsistent with an age of 53. *Id.*

Dr. Albert Lyons, the dentist who had treated her in the past, likewise concluded that Ms. Chan must be in her sixties. Tr. at 170. This opinion was based upon his current examination of her and upon a panorex showing bone loss and loss of all of her teeth. *Id.*

The ALJ did not ask that Ms. Chan be examined by other doctors, nor was any evidence introduced to suggest that competent gerontologists were not capable of rendering an opinion as to whether an individual was more likely approaching seventy years of age than sixty years of age. On the contrary, all of the twelve clinical and objective signs observed by Drs. Cherrick and Tsai are physical hallmarks of advanced age and two of those are, in and of themselves, highly reliable indicators of age. Specifically, as the claimant has persuasively argued:

> Arthritic changes in the spine occur in "an irregular but predictable fashion" so that "[i]t is possible to grade such changes and give reasonable estimates of age of the person." *Clinical Geriatrics* 7 (I. Rossman ed. 3d ed. 1986). Similarly, the costal cartilages calcify at known rates and in distinctive patterns, allowing for a high degree of precision in estimating age from an x-ray. J. Stewart and W. McCormick, *A Sex and Age-limited Ossification Pattern in Human Cartilages*, Am.J.Clin.Pathology, 1984; 81:765.

Memorandum of Law in Support of Plaintiff's Cross-motion for Judgment on the Pleadings at 18 [hereinafter Plaintiff's Memorandum].

At a hearing on June 15, 1988, however, the ALJ expressed a blatant disregard for the remand order:

> I never understood what [Judge Korman] was talking about when he said ... "the case is remanded to the Secretary for purpose of taken such medical evidence as will assist in determining the claimant's true age, and the weight to be given the birth certificate issued by the

---

1. While Dr. Young's records originally reflected a 1934 date of birth for Ms. Chan, Dr. Young explained that the error was caused by the need to match her union record for reimbursement purposes and inaccurate record keeping of his staff. Dr. Young corrected the records to reflect the 1922 date of birth.

Republic of China," well apparently what this case rests on at this point I don't know whether it's valid. Is that a couple of doctors have examined this women and they find her physical to be 65. Which to me is nonsense, and if I were to go along on the basis of it, I'd tell you that I would regard it as nonsense.

. . . . .

If this is what Judge Corman [sic] expects from me, he's not going to get it. This is why I'm upset, this is the most fictional thing I've ever seen. Now you suggest the procedure, I'm willing to listen to reason but I'm not a complete fool?

Tr. at 103–04 [spelling and grammatical errors here and in subsequent quotes are in the original transcript].

As the attorney for Ms. Chan sought to indicate the qualifications of Dr. Cherrick, one of the gerontologists who had submitted a report, the ALJ responded:

I couldn't care less.... No doctor is ever going to tell me, let a doctor examine me and let me tell me by examination how old I am. He couldn't do it in a million years. Nor could he do it to you, to her or to this women. And I find that complete fictitious.

Tr. at 104–05.

When the attorney sought to indicate possible precedents that would permit such evidence, the ALJ replied:

I will not, I tell you now say this women is 65 based on a physical examination, I won't do it. And I'm stating for the record, and I'm making a record that I'm doing it because of the reasons about (INAUDIBLE) you can go back to Judge Corman with the records and let him do, there's nothing in the Regulations that prescribe it.

Tr. at 105–06.

After an off-the-record discussion, the ALJ seemed to modify his stance somewhat, and indicated that, if Ms. Chan's attorney would provide an additional legal basis for medical evidence, he would arrange for a geriatric examination of Ms. Chan. Tr. at 107–08. In response to this

request, Ms. Chan's attorney submitted a memorandum of law on June 29, 1988, citing substantial authority favoring consideration of medical evidence in this case. Memorandum of Law in Support of Claimant found in Tr. at 189.

In a decision rendered on October 24, 1988, the ALJ neither ruled against the appropriateness of such evidence nor arranged for the additional examinations to which he had committed himself. The ALJ proceeded to discuss the medical evidence, apparently acknowledging its admissibility while deciding to give little or no weight to the detailed medical findings of the two independent expert gerontologists, the treating physician, and the treating dentist. Tr. at 89–90. The ALJ considered each of the medical observations of the expert and treating physicians, and proceeded to offer possible alternative explanations for the clinical conditions and symptoms. The ALJ did not credit the treating physician's statements that he had known Ms. Chan to be in her sixties, and he explained away Dr. Lyons' and Dr. Cherrick's observations that the claimant is edentulous by speculating that Ms. Chan may have had gum disease or accidents. The ALJ rejected the gerontologists' determination concerning her osteoarthritis, concluding instead that this condition may have been caused by trauma. He dismissed their findings concerning skeletal changes, explaining instead that "the osteoporesis [sic] the doctor found could represent extreme nutritional deficiencies in early age and not be characteristics of advanced current age." Tr. at 89. The ALJ finally came to an overall conclusion that the range of medical findings may be due to "premature aging due to a 'hard life' rather than actual advanced age ... or [may be due to] poor juvenile nutrition." *Id.*

In subsequent submissions to the Appeals Council, Dr. Cherrick and Dr. Tsai ruled out the likelihood of alternative explanations for the observed pattern of extensive symptoms of aging. Dr. Tsai indicated that the ALJ's alternative speculations are incorrect because extreme nutritional deficiencies would reveal osteomalacia, which is not present, and the trauma

suggested as the basis for the osteoarthritis would show some external scarring or x-ray evidence, both of which are lacking. Tr. at 239. Dr. Cherrick observed that:

> The [administrative law] judge's reasoning runs counter to the way a good diagnostician reasons. The informed physician synthesized [sic] findings into a clinical picture. The [ALJ], by dissecting the facts of the case, in each instance finds a plausible (if not a reasonable explanation) of the facts. In so doing, he is able to justify his position—but it is my firm belief that he does so at the expense of doing violence to what might be termed "good medical clinical judgement." In summary, I find the judge's reasoning to be medically unacceptable.

Tr. at 238. Both gerontologists reasserted their findings that Ms. Chan was at least 65 years old.

The Appeals Council adopted the recommended decision of the ALJ without adding any significant findings or reasoning. Tr. at 82–84. The Appeals Council concluded that it "does not believe that it is possible, based on the medical evidence of record, to reasonably determine a twelve-year disparity in age." Tr. at 83.

## DISCUSSION

■ When applying for Social Security benefits, an applicant is required to submit evidence of her date of birth. 20 C.F.R. § 404.715. The evidence must be "convincing."[2] 20 C.F.R. § 404.708. The Regulations of the Secretary provide that "preferred" evidence, when it is available, is generally accepted as convincing. Preferred evidence of age is a document prepared before the age of five, in the form of a birth certificate, hospital birth record, or religious record. 20 C.F.R. § 404.716(a). When "preferred evidence is not available, [the Administration] will consider any other evidence [the claimant provides to the Administration]. If this other evidence is several different records or documents which all show the same information, [the Administration] may decide it is convincing evidence even though it is not 'preferred' evidence." 20 C.F.R. § 404.709. The regulations do not establish a definitive list of the kind of evidence that is acceptable, but rather give a nonexclusive set of examples of evidence that could be considered convincing.[3] There is no presumption that any one particular form of non-preferred evidence is to be given greater weight than another. *Blanks v. Richardson*, 439 F.2d 1158, 1161 (5th Cir.1971). Because Ms. Chan has not produced evidence that meets the standard for "preferred" evidence, the issue presented is whether the Secretary properly concluded on the evidence before him that Ms. Chan was not eligible for benefits.

■ The principal evidence the ALJ had before him that contradicted Ms. Chan's current claim of October 7, 1922 as her date of birth consisted of the Hong Kong Identification card and marriage cer-

---

**2.** Section 404.708 of 20 C.F.R. provides: "When you give us evidence, we examine it to see if it is convincing evidence. If it is, no other evidence is needed." Section 404.708 sets out a number of factors which are to be considered in determining whether the evidence submitted is convincing. The agency examines the evidence as to whether:

> a) Information contained in the evidence was given by a person in a position to know the facts;
> b) There was any reason to give false information when the evidence was created;
> c) Information contained in the evidence was given under oath, or with witnesses present, or with the knowledge there was a penalty for giving false information;
> d) The evidence was created at the time the event took place or shortly thereafter;

> e) The evidence has been altered or has any erasures on it; and
> f) Information contained in the evidence agrees with other available evidence, including [the Social Security Administration's] records.

*Id.*

**3.** 20 C.F.R. § 404.716(b) provides:

> If you cannot obtain the preferred evidence of your age, you will be asked for other convincing evidence that shows your date of birth or age at a certain time such as: an original family bible or family record; school records; census records; a statement signed by the physician or midwife who was present at your birth; insurance policies; a marriage record; a passport; an employment record; a delayed birth certificate, your child's birth certificate; or an immigration or naturalization record.

tificate, the INS papers and social security card application, and her original union dues card. While such apparent admissions against interest by the claimant which tended to show that she is ineligible for benefits could, standing alone, constitute substantial evidence upon which the Secretary could choose to deny benefits, such admissions are not conclusive. A date of birth cannot be altered by the existence of a statement or a document indicating a different birthdate. Such statements or documents are merely evidence that must be weighed in light of all of the other evidence in an attempt to ascertain the truth.[4]

■ Accordingly, where a claimant has provided information and later contends that this information is inaccurate, the Secretary must consider whether there was a rational explanation as to why the claimant would have given inaccurate information in the first instance. *Sprung v. Weinberger*, 386 F.Supp. 74 (D.N.J.1974); *McCarty v. Sec. of H.H.S.*, Unemploy.Ins.Rep. (CCH) ¶ 16,707 (D.S.C. January 7, 1986). In *Sprung*, Judge Fisher recognized that, in the turbulence in Europe following World War II, an individual may have misrepresented his age in order to obtain employment and therefore sustenance. Judge Fisher went on to observe that where credible witnesses provide a reasonable explanation of the circumstances which led to the false statement, such an explanation may be sufficient to determine that the current assertion correcting the original false information is worthy of belief. 386 F.Supp. at 76–78.

■ Similarly, Social Security Administration Ruling 81–16, promulgated in 1981, recognizes that Holocaust survivors often misrepresented their dates of birth to help them survive in occupied Europe and in the death camps. Accordingly, age may be determined without reliance on any documents containing such false information. Social Security Ruling 81–16 in West's Social Security Reporting Service (1975–82) [hereinafter "SSR 81–16"]. Because the ruling embodied in SSR 81–16 did not establish new policy, but rather clarified an existing regulation, 20 C.F.R. § 404.708(b),[5] *Imber v. Schweiker*, Unemploy.Ins.Rep. (CCH) ¶ 15,612 (S.D.N.Y. January 4, 1984), the Secretary must carry out the intent of the regulations by looking to the circumstances of the original claimed misstatement. Where those circumstances provide a reasonable explanation, he must allow the claimant to correct the prior statement of age and establish eligibility. *Imber v. Schweiker*, Unemploy.Ins.Rep. (CCH) at ¶ 15,612. Moreover, the fact that a claimant continued to use an erroneous date of birth long after the necessity for its use passed is likewise not determinative. As the Secretary aptly observed in SSR 81–16:

> Most of those who survived continued to use the incorrect DB [date of birth] and transferred it to official documents, including Immigration and Naturalization Service records of those emigrating to the United States (U.S.). Most believed that any change could result in being refused entry into the U.S., or, if already here, deportation. The ages shown in the documents which form the U.S. domestic evidence were thus the incorrect ages which these individuals adopted in order to enhance their chances for survival.

SSR 81–16; *see also Goldstein v. Secretary of H.H.S.*, No. CV–87–0961, Transcript of motion (E.D.N.Y. March 30, 1990) (attached as Exhibit 2 to Memorandum of

---

**4.** If, for example, a valid contemporaneous birth certificate were produced, the regulations of the Secretary regarding preferred evidence would provide a basis for establishing the date of birth on the certificate, even in the face of an admission by the claimant which tended to contradict the certificate. Other evidence of comparable reliability that corroborates a birthdate should be entitled to similar deference despite admissions against interest to the contrary.

**5.** While SSR 81–16 addresses itself explicitly to Holocaust survivors, it is a ruling intended to implement an existing policy outlined more generally in 20 C.F.R. § 404.708(b), and as such, its underlying principles should be applicable to other circumstances where the claimant had compelling reasons to make false statements.

Law in Support of Plaintiff's Cross-motion for Judgment on the Pleadings).

While Ms. Chan's reasons for falsifying her age may not have been as compelling as those who lied to avoid the gas chambers, her explanation for why she originally misrepresented her age and why she continued to do so after she arrived in the United States is certainly plausible. Ms. Chan testified that she faced serious threats to her ability to earn a living and even survive in post-war Hong Kong if her true age were known.[6] Tr. at 22, 119. She testified that she continued to misstate her age at time of immigration for fear that any attempt to correct the erroneous date would result in denial of immigration or subsequent deportation. Tr. at 21–22.

■ Whether the ALJ would have been free to reject Ms. Chan's explanation if it had not been compellingly corroborated, is a question that need not be reached here because Ms. Chan did not ask him to take her word for it. She provided compelling additional evidence that substantiated her claim. Indeed, her explanation could be rejected only by failing to properly evaluate or consider the corroborating evidence she produced. This is precisely what the ALJ did here.

Ms. Chan has produced substantial and convincing medical evidence that she was born in 1922 rather than 1934. The extensive range of medical indications observed by two expert gerontologists demonstrate that Ms. Chan has the somatic and clinical characteristics of a person at least 65 years of age, including temporal rescission and general thinning of the hair of her head, seborrheic keratosis of the skin, hypertrophy of the knee joints (hypertrophic osteoarthritis), osteoarthritic changes and osteoporosis characteristic of advanced age, mild kyphosis resulting from osteoporosis, longitudinal ridging of the fingernails, senile arcus on both eyes, presbyopia which requires lens correction, wrinkles of the periorbital and perioral area, absence of teeth, senile plaque of skin, deformity of interphalangeal joints of both hands, and calcification of costosternal cartilage. Both expert gerontologists concluded that this range of symptoms was conclusive of an age of at least 65 and was inconsistent with an age of 53, and ruled out alternative hypotheses as to causes of the individual symptoms other than advanced age. The testimony of her treating physician and dentist also support a conclusion that she is over 65 years of age.

The Secretary has not produced medical evidence that contradicts these conclusions. Similarly, he has not pointed to any evidence to suggest that it is not possible for a gerontologist to reach a conclusion as to approximate age of an individual. In fact, the United States Attorney has conceded that medical evidence is properly considered and relevant in this case, *Covo v. Gardner*, 314 F.Supp. 894, 898 (S.D.N.Y. 1970), and he has not disputed Ms. Chan's assertion—supported by extensive citation to medical literature—that it is possible for experts on aging, such as Dr. Cherrick and Dr. Tsai, to assess age with a reasonable degree of certainly. Plaintiff's Memorandum at 16–23.

Under these circumstances, the ALJ violated the settled law that precludes him from substituting his own judgment for that of competent medical opinion. *McBrayer v. Secretary of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983). As the Court of Appeals held in *Gober v. Matthews*, 574 F.2d 772 (3d Cir. 1978):

> While an administrative law judge is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who testified before him.

*Id.* at 777. Other cases have likewise severely limited the authority of an ALJ and the Appeals Council to draw medical conclusions where medical evidence is lacking. *Wagner v. Secretary of Health & Human Servs.*, 906 F.2d 856, 862 (2d Cir.1990) ("[A] circumstantial critique by non-physicians,

---

**6.** Ms. Chan also provided the Appeals Council with a reference to the Encyclopedia Britannica that corroborated her testimony about the economic conditions in post-war Hong Kong. Tr. at 243–51.

however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion," even a retrospective one, where there was no medical evidence contradicting the medical opinion); *Rivera v. Sullivan,* 923 F.2d 964 (2d Cir. 1991); *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir.1982) ("[B]ecause an Administrative Law Judge as a rule is not a doctor, he should avoid commenting on the meaning of a test or clinical x-ray when there has been no supporting expert testimony."); *Johnson v. Bowen,* 687 F.Supp. 1284, 1303 (W.D.Wis.1988).[7]

Moreover, the regulations promulgated by the Secretary reflect the requirement that medical findings must be based upon expert opinion and scientific methods. In evaluating a claim of disability, "[a]ny medical findings in the evidence must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1526(b). The Secretary may also consider medical opinions provided by a medical consultant, but the consultant "must be a physician."[8] 20 C.F.R. § 404.1526(c).

While this is not a case that involves a physician's assessment of the ability of a claimant to perform work, it does involve an assessment of the condition of the human body by physicians who receive specialized training on the physiological and biological aspects of aging. A critical part of this training involves differentiating clinical and objective signs associated with the normal aging process from those associated with other causes, such as disease and injury. *The Practice of Geriatrics* 11 (E. Calkins, P. Davis, A. Ford, eds. 1986); *Textbook of General Medicine* 309 (M.

Kochar ed. 1983). Accordingly, it was error for the ALJ, who had not sought the advice of physicians with comparable training to that of the examining gerontologists here, to have rejected Ms. Chan's claim based on his untrained evaluation of objective signs normally associated with aging.

■ This is not the only error reflected in the record here. In his decision, the ALJ dismissed the birth affidavit submitted from the Peoples Republic of China, and Ms. Chan's brother's deposition in support of that affidavit, as well as the supplemental affidavits submitted by other members of Ms. Chan's family. These included affidavits of her step-mother, her step-sister, and her younger brother. The affidavit of Ms. Chan's step-mother, Yuk Lan Leong, states that her step-mother married her father when the step-mother was 19 years old, and that Ms. Chan was only three years younger than her step-mother. The step-mother also recounts how visitors often mistook them for sisters. Tr. at 155–56. The affidavit of her younger step-sister, Yee Yuk Chun, recounts the same family history concerning the marriage of their father to Yuk Lan Leong, and the repeated comments on the closeness in age between Ms. Chan and her step-mother, Ms. Yuk. Ms. Yee gives a thorough account of the schooling of Ms. Chan and herself, and confirms with specific details, Ms. Chan's account of her age at various stages of schooling. Ms. Yee also relates the fact that Ms. Chan was considered an "old maid" because Ms. Yee, her younger sister was married before her. Tr. at 150–52. Similarly, the deposition of her younger brother, Zhang Chuan, recounts that he was born in 1928, and that Ms. Chan is his

---

7. The *Johnson* case, was strikingly similar to the present case. The *Johnson* court reviewed the medical evidence and observed:

> Against this extensive and consistent array of informed medical assessments by doctors who personally dealt with plaintiff, the finding of the Appeals Council stands in solitary contrast. While the finding is a medical judgment, I can find no medical opinion in the record to support it. The members of the Appeals Council are not medical experts, and are not entitled to draw expert medical con-

clusions. To substitute their judgment for that of qualified physicians was clear error. *Johnson v. Bowen,* 687 F.Supp. 1284, 1303 (*citing Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir.1982); *Aubeuf v. Schweiker,* 649 F.2d 107, 112–13 (2d Cir.1981)).

8. The ALJ is empowered to call witnesses, including medical experts where appropriate, 42 U.S.C. § 405(d), and often does so. *See, e.g., De Leon v. Secretary of Health & Human Servs.,* 734 F.2d 930 (2d Cir.1984).

older sister. Mr. Zhang reports widespread recognition in his family and village that Ms. Chan was born in the same year as a cousin who was born in 1922. Mr. Zhang also affirms his sister's age when she attended school, the closeness in age between his sister and Ms. Yuk, her stepmother, and the village characterization of Ms. Chan as an "old maid," all of which support of Ms. Chan's claim of a 1922 birthdate. Tr. at 212–13.

The information provided in these affidavits is of a kind that would be known to her family members. Moreover, the concurrence of all of their assertions, and the detail which they provide, all strongly suggest that they are honest and accurate. A highly elaborate fabrication involving identical testimony of many individuals would be needed to create such a family history if it were not based on truth. Indeed, the ALJ did not reject this evidence on the ground that it was a fabrication. Instead, he simply ignored the affidavits of the members of Ms. Chan's family, and he rejected the Chinese birth certificate because it represented recollections of individuals whom he characterized as "people who most probably were illiterate and therefore would have made no record other than their own vague memories of the claimant's birth." Tr. at 90. This conclusion was simply wrong. As the Court of Appeals held in *Blanks v. Richardson:*

> It is unreasonable to ride roughshod over the memories of the brothers and sisters as to age hierarchy of the children in the family. Their statements may not lead to exact ages, but they certainly should be persuasive as to the order of birth. The Secretary would rewrite the family tree to makes [sic] James younger than his brother Jodie, contrary to the recollection of all family members.

439 F.2d 1158, 1161 (5th Cir.1971).

■ While the forgoing would ordinarily require a remand so that the ALJ could properly evaluate the evidence, *Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir.1984), such a disposition is not required on the record here. The case is seven years old and has already been remanded once for this purpose. On remand, the ALJ made it plain that he had no intention of making a good faith effort to comply with the order. While his formal written decision did not repeat the contempt he displayed in his comments on the record, there was no excuse for his failure to obtain expert medical advice relating to the issues of whether it was possible for gerontologists to determine the age of a claimant within a reasonable degree of certainty, and whether the opinions offered by the claimant's experts were valid.

Because there is compelling, objective, uncontradicted evidence supporting Ms. Chan's claim for benefits, and because the ALJ did not act in good faith in evaluating the evidence on the prior remand, no further remand for this purpose is required. The decision of the Secretary is reversed and the case is remanded for the calculation of benefits. *Valente v. Sullivan,* 897 F.2d 54, 58 (2d Cir.1990) ("ALJ's failure to make findings in accordance with our mandate has already contributed to an excessive expenditure of time and resources by the parties and the courts."); *Woody v. Secretary of Health & Human Servs.,* 859 F.2d 1156, 1162–63 (3rd Cir.1988) (improper medical conclusions by ALJ and 8 years of administrative delay warrant no further administrative proceedings); *De Leon v. Secretary of Health and Human Servs.,* 734 F.2d 930, 938 (2d Cir.1984); *Smith v. Califano,* 637 F.2d 968, 972 n. 1 (3rd Cir 1981); *Nasser v. Secretary of Health Education & Welfare,* 388 F.Supp. 58, 64 (E.D.N.Y. 1975); *Johnson v. Bowen,* 687 F.Supp. 1284, 1303–04 (W.D.Wis.1988).

I wish to express my appreciation to Nancy Chang and Brooklyn Legal Services, Corporation B, for agreeing to undertake the representation of Ms. Chan, and for providing her with legal assistance of the highest caliber.

SO ORDERED.