Dominick **FILOCOMO**, Plaintiff,

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**No. 96 CV 2817 (NG).**

United States District Court,
E.D. New York.

Nov. 7, 1996.

Michele F. Strum, Scheine, Fusco, Brandenstein & Rada, Woodbury, NY, for plaintiff.

Linda M. Marino, United States Attorney's Office, E.D. of New York, for defendant.

## OPINION AND ORDER

GERSHON, District Judge:

Plaintiff brings this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of Social Security denying plaintiff's application for disability insurance benefits. Plaintiff and defendant each move for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

This is the second time that plaintiff has brought his case before this court. In March of 1994, the court remanded the case to the

Commissioner with a number of instructions, including the directive to follow the treating physician rule when reconsidering the opinions of plaintiff's physicians regarding his condition. *See Filocomo v. Shalala*, No. 93 CV 1004 (E.D.N.Y. March 7, 1994) (RD).[1] Because the Commissioner has once again failed to give the appropriate weight to the opinion of plaintiff's treating physicians, the denial of plaintiff's disability insurance benefits is reversed; and the case is remanded for a calculation of benefits.

### FACTS

Plaintiff, Dominick Filocomo, worked as an electrician for twenty-two years before back and leg injuries caused him to stop working in 1982, when he was 39 years old. Plaintiff had injured his back eight years earlier in a work-related accident; and in 1981, while working for the New York City Transit Authority, he again sustained back injuries when he fell from a ladder onto his back and head. As a result of the 1981 accident, plaintiff was hospitalized twice for traction and placed on restricted duty at work. In June of 1982, the Medical Board of the New York City Employees' Retirement System determined that, as a result of an accidental injury sustained in city service, plaintiff should be retired on an Accident Disability as of May 26, 1982. It is undisputed that plaintiff met the special insured status requirements of the Act from May 26, 1982 through March 31, 1987. *See* 42 U.S.C. § 423; 20 C.F.R. §§ 404.101, 404.130.

### ANALYSIS

A. *Determination of Disability*

A claimant seeking disability insurance benefits is considered disabled if he is unable to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). The claimant's physical or mental impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

The Secretary has established a five-step sequential process to facilitate the determination of disability. 20 C.F.R. § 404.1520 The Second Circuit has articulated this process as follows:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. [2] If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. [3] If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. [4] Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. [5] Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982) (per curiam). The claimant bears the burden of proof as to the first four steps. *Id.* If the claimant establishes that his impairment prevents him from performing his

---

1. The court stated:
   Though it is not entirely clear, the ALJ appears to have construed the opinions of [plaintiff's orthopedic surgeon and plaintiff's psychologist] as if they were merely medical consultants evaluating plaintiff for the first time. Actually, both physicians were clearly treating physicians during some period of plaintiff's disability. Furthermore, their most recent diagnoses could be deemed retrospective opinions. On remand, the ALJ should follow this Circuit's treating physician rule ... in considering the opinions of [plaintiff's] two physicians.

past work, the burden shifts to the Commissioner to prove the last step. *Id.; Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir.1984).

■ In this case, the ALJ found that plaintiff had met his burden of proof with regard to the first four steps delineated above. In other words, the ALJ concluded that plaintiff (1) is not currently engaged in substantial gainful activity; (2) has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities; (3) does not have an impairment which is listed in Appendix 1 of the regulations; and (4) is incapable of performing his past work. The ALJ then concluded that, although plaintiff cannot resume employment as an electrician, he is not "disabled" because, during the time that he met the insured status requirements of the Act, he could perform low-stress, sedentary jobs, such as "bench assembly; clerical and receptionist; and information clerk." The dispositive issue before this court is whether the Commissioner successfully established that there are low-stress sedentary jobs which plaintiff can perform.

### B. *Reviewing Determination of Disability*

A court's review of the Commissioner's final decision as to plaintiff's disability is limited. Absent legal error, a finding by the Commissioner that a claimant is not disabled is conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Bluvband*, 730 F.2d at 891. Substantial evidence has been defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citations omitted). The court's standard of review is not *de novo;* accordingly, "the Secretary's findings are conclusive even when a reviewing court's independent analysis of the evidence may differ from the Secretary's analysis." *Ortega v. Shalala*, No. 94–0941, 1995 WL 133806 at *3 (S.D.N.Y. March 27, 1995) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982), *cert. denied*, 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983)). The court has the power to "enter ... a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security with or without remanding the case for rehearing." 42 U.S.C. § 405(g).

### C. *Evaluation of the Evidence*

■ In this case, the ALJ committed legal error by misapplying the treating physician rule in determining that plaintiff has the residual functional capacity for low-stress sedentary work. The Secretary's regulations provide that a treating physician's opinion must be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). This regulation is binding on this court. *See Schisler v. Sullivan*, 3 F.3d 563 (2d Cir.1993).

In this case, plaintiff presented medical opinions from two doctors—Dr. Ira Schwartz, a psychologist, and Dr. Martin Wolpin, an orthopedic surgeon—who treated him during the period when he met the insured status requirements of the Act and who re-examined him in 1992, when his insured status had expired. During plaintiff's earlier appeal of the ALJ's initial denial of benefits, this court explicitly determined that both Dr. Wolpin and Dr. Schwartz are "treating physicians" within the meaning of the treating physician rule. *See Filocomo v. Shalala*, No. 93 CV 1004 (E.D.N.Y. March 7, 1994). No additional medical evidence has been introduced by the Commissioner to contradict the conclusions of Dr. Schwartz and Dr. Wolpin.

#### 1. *Dr. Schwartz*

Dr. Schwartz treated plaintiff from July, 1983 to December, 1983. At that time, he diagnosed plaintiff with depressive neurosis, which he concluded was "definitely precipitated" by plaintiff's back problems. Plaintiff testified before the ALJ that he stopped seeing Dr. Schwartz in 1983 for financial reasons and out of a sense of futility. In 1992, Dr. Schwartz re-examined plaintiff, diagnosed him with dysthymia, a form of depression, and concluded that "[t]he injury to his back which occurred on his job in 1971 is causally related to the condition." Dr. Schwartz also concluded that plaintiff "has a disabling psychological condition, character-

ized by depression, suicidal thinking with moderate risk, and severe family problems."

### 2. *Dr. Wolpin*

In 1978, Dr. Wolpin began treating plaintiff for back problems caused by his work-related accidents. In 1981, Dr. Wolpin diagnosed plaintiff as having an acute re-exacerbation of lumbosacral strain and concluded that plaintiff "is markedly disabled for a job requiring manual labor, heavy lifting or prolonged sitting or standing." This diagnosis followed a series of tests conducted by Dr. Wolpin, including x-rays of the lumbosacral spine and pelvis disclosing disc space narrowing. The record also reveals that, in 1978, Dr. Wolpin requested that the County Clerk of Kings County excuse plaintiff from jury duty, as "sitting for long periods of time might be injurious to his health."

Dr. Wolpin continued to treat plaintiff for back and leg problems until May of 1984. During that period, plaintiff's condition was sufficiently severe that Dr. Wolpin "advised [plaintiff] on multiple occasions that he should have surgical intervention." Before the ALJ, plaintiff testified that he declined to undergo surgery because he had a friend whose condition worsened after similar surgery, and because Dr. Wolpin could not guarantee that the operation would relieve his pain. In a document dated February 8, 1984, Dr. Wolpin attributed plaintiff's reluctance to "acute depression as a result of this back problem."

■ In 1992, Dr. Wolpin again conducted a physical examination of plaintiff and concluded that plaintiff's back and leg ailments "have been persistent from at least 1981 to the present date." After that evaluation, Dr. Wolpin determined that plaintiff's condition rendered him "totally restricted in all levels of activity and ... unable to perform any type of work activities."[2]

### 3. *The Opinion of the ALJ*

#### a. *Plaintiff's Capacity for Prolonged Sitting*

■ The ALJ improperly discounted the opinions of plaintiff's treating physicians in determining that plaintiff could perform low-stress sedentary work. In a telling omission, the ALJ never addresses Dr. Wolpin's conclusion that plaintiff is incapable of prolonged sitting.[3] Sedentary work, as defined by the Code of Federal Regulations,

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). This Circuit has recognized that "the concept of sedentary work contemplates substantial sitting." *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir. 1984) (citing *Carroll v. Secretary of Health and Human Serv.,* 705 F.2d 638 (2d Cir. 1983)). In fact, "[t]he ability to sit for prolonged periods is an essential inquiry in determining whether a claimant has the residual functional capacity to perform sedentary work." *Koseck v. Secretary of Health and Human Serv.,* 865 F.Supp. 1000, 1013 (W.D.N.Y.1994).

■ The Commissioner does not deny that she submitted no medical evidence contradicting Dr. Wolpin's conclusion that plaintiff cannot sit for prolonged periods of time.[4]

---

**2.** Both Dr. Schwartz and Dr. Wolpin re-examined plaintiff in 1992, after the expiration of plaintiff's insured status. The ALJ appropriately considered the doctors' conclusions reached on the basis of those examinations, even though the conclusions were retrospective. *See Rivera v. Sullivan,* 923 F.2d 964, 968 (2d Cir.1991) (citing *Wagner v. Secretary of Health and Human Serv.,* 906 F.2d 856 (2d Cir.1990)).

**3.** Although the only documents in which Dr. Wolpin actually discusses sitting pre-date the time period during which Plaintiff met the special insured status requirements of the Act (one document is dated March 22, 1978, and the other November 20, 1981), it is clear from all of Dr. Wolpin's records that there was no improvement in plaintiff's condition from the time that those documents were issued through the period that plaintiff met the insured status requirements.

**4.** The record does contain one "residual functional capacity assessment," completed by a doctor who never physically examined Plaintiff.

Moreover, the Commissioner has cited—and the record reveals—no substantial nonmedical evidence that is inconsistent with that conclusion. The ALJ emphasized that plaintiff received no medical treatment between 1984 and 1992. However, this in and of itself does not constitute substantial evidence sufficient to override Dr. Wolpin's medical conclusions.[5] The ALJ himself determined that, even though plaintiff received no medical treatment during the period in question, plaintiff is incapable of returning to his past relevant work. Yet the ALJ identified no reason for giving more weight to the failure to seek treatment in determining whether plaintiff is capable of prolonged sitting than he gave to that fact in determining whether plaintiff is capable of returning to his job as an electrician.

Finally, the record makes clear that Dr. Wolpin based his conclusion on "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(d)(2). The ALJ did not question the acceptability of the techniques used by Dr. Wolpin. Instead, the ALJ simply evaluated the tests anew and—without citing any supporting expert testimony—reached conclusions that differed from those of Dr. Wolpin. For example, in concluding that plaintiff is capable of low-stress sedentary work, the ALJ stated,

> [E]ven though there was some restriction of ranges of motion of the lumbosacral spine, positive straight-leg raising, and reports of decreased sensation in the left lower extremity, these clinical findings are, to a great extent, subjective and in the control of the individual being examined. Although there is some evidence of radiculopathy with the trace ankle jerk and weak left extensor halluces, this does not establish that the claimant's previous capacity for work activity is significantly affected,

especially the ability to perform sedentary work with the occasional standing and walking.

By reevaluating Dr. Wolpin's conclusions in that manner, the ALJ improperly substituted his own judgments for those of a physician. *See McBrayer v. Secretary of Health and Human Serv.,* 712 F.2d 795, 798–99 (2d Cir. 1983); *Chan Wai King v. Sullivan,* 757 F.Supp. 179, 186 (E.D.N.Y.1991). In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings. *See Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir.1982).

In sum, Dr. Wolpin's conclusion that plaintiff is incapable of prolonged sitting is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). As such, it is entitled to controlling weight; and the ALJ's determination that plaintiff can perform sedentary work must be reversed.

b. *Testimony of the Vocational Expert*

The ALJ's determination that plaintiff is not disabled rests in large part on the testimony of a vocational expert who asserted that work exists in the national and regional economy for a person of plaintiff's age, education and work experience, with a "residual functional capacity to sit six hours total" and "a mild depression." In their briefs, the parties debate the validity of the vocational expert's appraisal of work opportunities. However, I need not resolve this debate, because the ALJ erred in concluding that plaintiff is capable of prolonged sitting. As plaintiff's actual condition was not reflected in the underlying facts upon which the vocational expert based his assessment, that assessment is immaterial to the determi-

Neither the ALJ nor the Commissioner cites this assessment in support of the conclusion that Plaintiff is not disabled. Any such reliance would have been unfounded, as the conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little if any weight. *See Whitney v. Schweiker,* 695 F.2d 784 (7th Cir.1982).

5. The ALJ also emphasized plaintiff's failure to seek treatment in determining that plaintiff had exaggerated his subjective complaints of pain.

The ALJ is, of course, entitled to rely "not only on what the record says, but also on what it does not say" in evaluating the credibility of plaintiff's testimony. *Dumas v. Schweiker,* 712 F.2d 1545, 1553 (2d Cir.1983). However, given the absence of any medical testimony contradicting the opinions of plaintiff's treating physicians, the ALJ's rejection of plaintiff's subjective complaints of pain does not by itself constitute substantial evidence supporting the denial of benefits.

nation of whether or not plaintiff is disabled. *See Dousewicz v. Harris,* 646 F.2d 771, 774 (2d Cir.1981).

### c. *Recent Medical Reports*

Finally, plaintiff has submitted a number of recent medical reports in support of his claim that he is disabled. The Commissioner strenuously argues that these reports are irrelevant. Since my decision to reverse the denial of benefits has been reached without consideration of these documents, the issue of the propriety of their submission need not be addressed.

### *CONCLUSION*

For the foregoing reasons, plaintiff's motion is granted, and the final determination of the Commissioner is reversed. Several years have passed since plaintiff first applied for disability insurance benefits, and the matter has already been remanded to the Commissioner. Despite the court's prior directives, the Commissioner has failed to properly apply the treating physician rule and has not obtained or relied on any evidence contrary to the opinions of the treating physicians. Therefore the case is now remanded to the Commissioner solely for the calculation and payment of benefits. *See Rivera,* 923 F.2d at 970; *Valente v. Sullivan,* 897 F.2d 54, 57–58 (2d Cir.1990); *Koseck,* 865 F.Supp. at 1015 (W.D.N.Y.1994)

**SO ORDERED.**