**Carolyn S. TODD, Plaintiff,**

v.

**Kenneth APFEL, Commissioner Social Security Administration, Defendant.**

**No. 97–2966–G/V.**

United States District Court,
W.D. Tennessee,
Western Division.

May 20, 1998.

748

Beth Strickland Bates, West Tennessee Legal Services, Inc., Jackson, TN, for Plaintiff.

Brian Quarles, Asst. U.S. Atty., Memphis, TN, for Defendant.

## ORDER AFFIRMING DENIAL OF DISABILITY BENEFITS

GIBBONS, Chief Judge.

Plaintiff Carolyn S. Todd appeals from a decision of the Commissioner of Social Secu-

rity denying her application for disability insurance benefits and supplemental security income. The appeal was referred to the United States Magistrate Judge for report and recommendation. The magistrate's report recommending that the decision of the Commissioner be affirmed was filed March 30, 1998. Plaintiff has objected to the report and recommendation. The court has reviewed the magistrate judge's report and recommendation, plaintiff's objections and the entire record in this cause. Based on a *de novo* review of the record the court adopts the magistrate judge's report and recommendation. The decision of the Commissioner is affirmed.

IT IS SO ORDERED.

VESCOVO, United States Magistrate Judge.

## REPORT AND RECOMMENDATION

Plaintiff, Carolyn Todd, appeals from a decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI"). The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons given below, the magistrate judge recommends that the decision of the Commissioner be affirmed.

### PROPOSED FINDINGS OF FACT

#### 1. *Procedural Background*

Claimant first applied for Social Security Disability Benefits and Supplemental Income Security payments on December 22, 1993. At first, she complained of headaches, pain in her left arm, neck and shoulder. This application was denied both initially on April 12, 1994, and after reconsideration on October 7, 1994. (In her request for reconsideration, claimant noted headaches as an additional medical condition.) Claimant then filed a request for a hearing which was duly held on November 28, 1995, before an Administrative Law Judge ("ALJ"). The ALJ denied claimant's application for benefits on April 26, 1996. The Appeals Council denied the re-

quest for review on September 18, 1997, leaving the ALJ's decision as the final decision.

Claimant filed suit in federal district court on October 16, 1997, pursuant to 42 U.S.C. § 405(g) alleging, in the following order, that the Commissioner (1) committed an initial legal error by improperly applying the Medical Vocation Guidelines; and (2) the Commissioners' decision that the claimant does not meet the Listing of Impairments criteria is not supported by substantial evidence.

#### 2. *Five–Step Analysis*

Entitlement to Social Security benefits is determined by the use of a five-step sequential analysis set forth in the Social Security Regulations. 20 C.F.R. §§ 404.1520 and 416.920. First, the claimant must not be engaged in substantial gainful activity for a period of not less than twelve months. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(c) and 416.920(c). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the impairment satisfies the criteria for a listed impairment, then the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the residual functional capacity to return to any past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the ALJ finds the claimant unable to perform past relevant work, then as the fifth step the ALJ must show that the claimant can perform other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

In this case, the claimant has taken issue with the findings in steps three and five of the sequential analysis. The ALJ found that the claimant suffered from obesity, migraine headaches, borderline intellectual functioning, various musculoskeletal strains and

pains, as well as chronic depression. The ALJ determined, however, that these impairments did not meet or equal the Listing of Impairments criteria (step three) or limit the claimant's ability to perform sedentary work (step five).

■ The Social Security Regulations recognize that symptoms can suggest a greater severity of impairment than can be shown by objective medical evidence alone. 20 CFR 404.1529. Indeed, the regulations state that claims about the intensity of symptoms, or their effect on the ability to work, will not be rejected solely because the objective medical evidence dose not substantiate them. *Id.* at 404.1529(c)(2). However, in order to evaluate the severity, persistence or functionally limiting effects of these symptoms the fact finder must assess the claimant's credibility based on a number of factors. Social Security Ruling (SSR) 96–7p, 1996 WL 374186 (S.S.A.). The fact finder must consider all of the evidence in the case including medical signs or laboratory findings, medical history, statements from the claimant and the claimant's treating or examining physician, as well as daily activities, location, duration and frequency of symptoms, precipitating and aggravating factors and other restrictions or functional limitations. 20 CFR 404.1529(a). The decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear the weight given to the claimant's statements and the reason for that weight. SSR 96–7p, 1996 WL 374186 (S.S.A.) at *3. The regulations further provide that when assessing credibility the fact finder should consider the consistency of the claimant's statements, both internally and with other information in the record, the medical treatment history, medical evidence and statements from other non-medical sources such as family members and friends. *Id.* at *5.

### 3. *The Claimant's Condition*

The claimant was 35 years of age at the time of the ALJ's decision in April 1996. She has an eighth grade education and psychological testing reveals she functions academically at about the sixth grade level. Her past relevant work included work as a sewing machine operator and construction laborer. She is 5'7" tall, and, at the time of the hearing, weighed 314 lbs.

The claimant's medical problems seemed to commence after an on the job injury she suffered to her neck and left arm on July 2, 1992. She saw Dr. D.J. Canale on July 16, August 6, and August 27, 1992, for treatment of these injuries. (TR 171–76.) He ordered x-rays and an MRI which were both completely normal. On her final visit, Canale advised her to return to work and explained to her that she did not have a serious injury. Another MRI on claimant's cervical spine was performed on December 15, 1992, at the request of Dr. Shaver with normal results. (TR 178.)

Chronologically, the claimant's next record of treatment is from the Rehab Clinic of Union City from February 9, 1993 through April 23, 1993. (TR 182–95.) These records indicate that the claimant had been referred to the Rehab clinic by Dr. McAfee, whom the claimant had been seeing since November 1992.[1] According to the initial evaluation preformed at the Rehab Clinic, the claimant had been receiving nerve blocks, ultrasound and electrical stimulation treatment from Dr. McAfee on a regular basis. (TR 194.) After 27 sessions in less than three months, the claimant discontinued treatment at the Rehab Clinic. The summary of progress noted that the claimant continued to have good days and bad days but still experienced guarded movement and lack of mobility in her left shoulder. (TR 183.)

After filing for social security benefits in December 1993, the claimant next saw Dr. St. Clair, an orthopedic surgeon, for a consultative social security exam on March 22, 1994. Dr. St. Clair completed a Medical Assessment of Ability to do Work–Related Activities (Physical) based on his examination of the claimant. (TR 167–170.) Physical examination of the claimant revealed restricted movement of the neck and the left arm with tenderness of the left arm. Other joints—wrists, knees, and ankles—had sym-

---

1. Claimant submitted no records of her treatment from Dr. McAfee.

metrical range of motions with no indication of restricted movement, swelling, muscle spasms or heat. Dr. St. Clair opined that the claimant had the ability to occasionally lift up to fifty pounds and frequently lift up to 25 pounds and could stand or walk and sit about 6 hours in an 8 hour workday.

The next record of treatment is from Dr. Feldhouse of the Dyersburg Medical Group who saw the claimant from March 23, 1994, through October 24, 1995. (TR 198–205, 215–240.) The claimant presented to Dr. Feldhouse on March 23, 1994 with a sudden onset of pain down her left leg and in the sacroiliac ("SI") joint. (Aside from her social security examination, this was the first medical visit since rehab ended the year before.) During the course of her treatment by Dr. Feldhouse, the claimant generally complained of headaches, depression, back pain, joint and muscular pain in her shoulders on two occasions, left leg and SI pain on several visits and right knee pain beginning April 1995. Dr. Feldman referred claimant to the Northwest Counseling Center for stress reduction therapy in May 1994 because of her depressive episodes, (TR 205), and to Dr. John Janovich for the right knee problem. In addition, the increasing severity of the claimant's headaches led Feldhouse to consult with Dr. Ngo, a neurologist with the Dyersburg Medical Group. Dr. Ngo saw the claimant approximately five times from December 2, 1994 through April 24, 1995, and prescribed various medications for the claimant's headaches. (TR 237–240.) During her testimony at the hearing, the claimant claimed to suffer four or five headaches per month. (TR 36.) She stated she took medication for these headaches and that they would sometimes last two or three days, in which case she would have "to go get a shot and get in a dark place." (TR 37.)

The problem with the claimant's right knee which was first noted by Dr. Feldhouse was eventually treated by Dr. John Janovich who saw the claimant from July 19, 1995 through November 17, 1995. (TR 241–56.) Dr. Janovich preformed arthroscopy on the knee August 10, 1995, and aside from recovery after the operation, most of the claimant's complaints from then on involved pain and numbness in her left hip and leg. Dr. Janovich diagnosed left lateral hip bursitis and mild sciatic irritability. He suggested the claimant lose weight and prescribed Oruvail. On later visits she was given trigger point injections and sciatic nerve blocks with good results. Dr. Janovich also completed a Medical Assessment of Ability to do Work–Related Activities (Physical) in December 1995 based on his treating relationship with the claimant. (TR 271–72.) Dr. Janovich assessed the claimant's as able to lift a maximum of 20 pounds occasionally and 10 pounds frequently in an 8 hour workday. He was also of the opinion that the claimant could stand at least 2 hours and sit about 6 hours in an 8 hour day. Dr. Janovich described the claimant's significant physical limitation as chronic recurrent left lateral hip bursitis.

The record also contains evaluations of the claimant's mental capacities. The Northwest Counseling Center sent a letter on August 2, 1994, to the disability determination section stating that the claimant had been receiving outpatient treatment for depression without psychotic features at that facility since May 24, 1994. (TR 197.) The therapist who wrote the letter was of the opinion that the claimant was able to perform all life functioning skills and had a very good prognosis if she remained compliant with treatment of medication and therapy.

The claimant was also evaluated by Dr. Rex Haire, Ph.D. at the request of the Tennessee Disability Determination Services on September 14, 1994. (TR 206–14.) Dr. Haire diagnosed the claimant as suffering from borderline intellectual functioning and nonpsychotic major depression. Dr. Haire also completed a Medical Assessment of Ability to do Work–Related Activities (Mental) and rated the claimant as "limited" in three of four areas. However, Dr. Haire also stated that he felt the claimant had the capacity to perform simple tasks and had adequate social skills for interaction with coworkers and supervisors. Dr. Haire also opined that the claimant would probably be a conscientious worker and that it was likely that her pain and headaches would diminish with the emotional tension of her situational stress.

The final piece of evidence, submitted after the date of the hearing but considered in the ALJ's decision, was the vocational evaluation of Dr. Stephanie Barnes, Rh.D. (TR 258–70.) Dr. Barnes conducted an interview of the claimant, reviewed her medical records and administered various psychological tests. Generally, Dr. Barnes agreed with the opinion of Dr. Haire that the claimant was functioning with borderline intellectual capacity. Dr. Barnes recounted the claimant's sundry complaints of chronic pain and depression. She concluded by noting that the claimant herself felt she could work at a sedentary job on "good days," however, the claimant stated she had "bad days" at least half of the month when she would be unreliable or unable to concentrate on her work.

### 4. The ALJ's Decision

The ALJ's decision began with a thorough and evenhanded evaluation of the objective evidence. The ALJ then considered the seven factors listed in 20 CFR 404.1529 which are to be used when evaluating a claimant's subjective symptoms. The ALJ concluded that although there were some "minor instants of inconsistentency" in the claimant's statements, her "testimony was generally credible and agreed with the medical evidence; however, the limitations she described simply do not reach the level of disability for a person of such young age." (TR 17–18.) The ALJ made four specific findings with respect to the claimant's ability. First, the ALJ concluded that the claimant retained the capacity to lift ten pounds occasionally and five pounds frequently, to stand and/or walk two hours, and to sit for six hours with normal breaks during an eight hour workday. Second, the ALJ found that the claimant was not significantly limited by headaches, which the claimant admitted only occur four or five times a month and are relieved by medication. Third, the ALJ concluded that the claimant's intellectual ability did not limit her to unskilled work since some of her past work had been at a semi-skilled level and there had been no evidence of a decline in intellect since then. Finally, the ALJ found that the claimant's depression did not impose significant limitations, especially since the record indicated that the claimant's

symptoms would diminish if she went back to work. Based on these findings, the ALJ concluded that the claimant could not return to her past relevant work.

In keeping with the sequential analysis set out in the regulations, the ALJ next undertook an evaluation of the claimant's residual functional capacity based on rules provided in the Medical Vocational Guidelines or "grid." Utilizing the findings above, the ALJ concluded that the claimant's particular vocational and physical limitations coincided with the criteria in Rule 201.25 which directs a conclusion of "not disabled."

## CONCLUSIONS OF LAW

### 1. Standard of Review

Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision, and whether the Commissioner used the proper criteria in making the decision. 42 U.S.C. § 405(g); *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir.1994); *Abbott v. Sullivan,* 905 F.2d 918 (6th Cir.1990). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 535 (6th Cir.1981). In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Abbott v. Sullivan,* 905 F.2d at 923. If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." *Barker v. Shalala,* 40 F.3d at 794 (citing *Smith v. Secretary of Health and Human Services,* 893 F.2d 106, 108 (6th Cir. 1989)). If supported by substantial evidence, the Commissioner's decision must be affirmed even if the reviewing court would have decided the case differently and even if substantial evidence supports the opposite conclusion. *Kinsella v. Schweiker,* 708 F.2d

1058, 1059 (6th Cir.1983). Similarly, the court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir.1994).

### 2. *Claimant's Arguments*

In this case the claimant argues that the decision of the ALJ is flawed in two respects. First, the claimant contends that the ALJ's use of the Medical–Vocational Guidelines ("Grid") to determine residual functional capacity (step five) was improper and legal error since the ALJ had already determined that the claimant suffered from a variety of "severe non-exertional impairments." Second, the claimant argues that the ALJ's decision that the claimant does not satisfy the Listing of Impairments criteria is not supported by substantial evidence (step three). The court will address these arguments in reverse order to remain consistent with the sequential nature of the five step analysis.

### A. *Listing of Impairments*

The claimant maintains that the severity of her condition meets or is medically equivalent to the regulations governing obesity found at 20 CFR 404, Subpart P, Appendix 1, Sec. 9.09. In particular, the claimant contends that she satisfies the weight requirement and has demonstrated that she suffers from pain and limitation of movement in a weight-bearing joint. The relevant section reads as follows:

> 9.09 Obesity. Weight equal to or greater than the values specified in Table I for males, Table II for females (100 percent above desired level), and one of the following:
>
> A. History of pain and limitation of motion in any weight-bearing joint or the lumbosacral spine (on physical examination) associated with findings on medically acceptable imaging techniques of

arthritis in the affected joint or lumbosacral spine; or

\* \* \* \* \* \*

20 CFR Part 404, Subpart P, App. 1, Part A, § 9.09.

 The above criteria comprises a definition of disabled that is binding on the Commissioner and if the claimant satisfies this criteria he or she is considered per se disabled. *See Johnson v. Secretary of Health and Human Services*, 794 F.2d 1106 (6th Cir.1986). The claimant must describe the specific listing met by her impairment and state exactly how the criteria set forth in the listing are met. 20 CFR 404.1512(c). The amount of evidence needed to satisfy the § 9.09A requirement has received a good deal of attention from other courts. There is a unanimity of opinion that the threshold for x-ray evidence is low. *See Ingram v. Chater*, 107 F.3d 598, 603 (8th Cir.1997) (holding a claimant must demonstrate only a minimal amount of pain, limitation of motion and x-ray evidence of arthritis for purposes of § 9.09A); *Hughes v. Shalala*, 23 F.3d 957, 959 (5th Cir.1994) (noting the "listing requires only limitation of motion and any amount of x-ray evidence"); *Carnes v. Sullivan*, 936 F.2d 1215, 1219, (11th Cir.1991) (holding that the claimant "need present no more than evidence of minimal degenerative joint changes").

 In this case, the claimant argues that she has satisfied § 9.09A by demonstrating mild degenerative arthritis of the medial compartment of her right knee. Although the regulations require confirmation of arthritis by "findings on medically acceptable imaging techniques," the claimant contends that her condition was diagnosed during arthroscopic surgery. In the post-operative diagnosis of the arthroscopic knee surgery, Dr. Janovich noted "mild degenerative arthritis of the medial compartment" in the right knee.[2] (TR 245.) This diagnosis was evidently based on Dr. Janovich's visual inspection of the knee though the arthroscope

---

**2.** In addition, the claimant points to a handful of other references in the records of Dr. Feldhouse noting treatment and diagnosis of arthritis. (TR 33, 220, 222, 224.) These references, however, are unrelated to claimant's knee problem, having been made prior to her first complaint about knee problems. Instead, the four references appear to relate to her shoulder and neck complaints.

wherein he observed "a large chondrofied anterior synovial shelf in the medial compartment with meniscal degeneration of the anterior horn .. and a corresponding erosion of the medial femoral condyle. . . ." *Id.* In any event, the ALJ determined that although the claimant's weight was sufficient to meet the obesity requirements[3], the evidence did not "reflect any of the five related conditions described in the listing," (TR 14), but he did not articulate any factual basis for his conclusion. The court would note that the ALJ has a responsibility to not only convey his conclusions, but also some idea of how he reached them. He must give some minimal articulation of the reasoning by which he reached a conclusion as well as the specific findings which support that reasoning. *See Honeysucker v. Bowen,* 649 F.Supp. 1155, 1158 (N.D.Ill.1986).

█ Although the showing required by § 9.09A is admittedly low, the court has not located any authority which would allow the ALJ to substitute a visual confirmation of arthritis for the required findings by imaging techniques. The only x-ray of claimant's right knee mentioned in the record was taken by Dr. Janovich before the surgery and was described as "unremarkable." (TR 241.) Even if the court were to treat Dr. Janovich's visual observation of arthritic changes as an objective finding of arthritis equal to the imaging requirement, the claimant would still not meet the requirements of § 9.09A. That section requires a finding on physical examination of limitation of motion in the joint and claimant has failed to point to any mention in the record of a limitation of motion in her right knee. Indeed, prior to the onset of the right knee problem in April 1995, the orthopedic consultant had found normal range of motion of the knee. (TR 467.) In addition, the record reflects that the claimant's complaints about her right knee had all but disappeared after the arthroscopic surgery in August 1995. The arthroscopic surgery was considered a success, and with the exception of some mild synovitis and aching in November 1995, (TR 256), claimant's right knee problem was considered benign post-operatively. (TR 252.) Moreover, the plaintiff did not allege or offer any evidence that she met any of the alternative requirements of § 9.09B, C, D, or E. The court therefore concludes that the claimant has failed to carry the burden of presenting sufficient evidence she satisfies the listing of impairments.

In the alternative, the claimant argues that even if she failed to precisely meet the obesity requirements of § 9.09A, the ALJ was obligated to call a medical expert to evaluate whether she had a condition equivalent to § 9.09A. Social Security Ruling 96–6p states, "an administrative law judge . . . must obtain an updated medical opinion from a medical expert . . . [w]hen no additional medical evidence is received, but in the opinion of the administrative law judge . . . the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable." SSR 96–6p.

█ In this case, the ALJ did not call a medical expert to determine equivalence, he did not explain his reasons for failing to call a medical expert, nor did he discuss the need for a medical expert. As with all decisions of the ALJ, the decision not to call a medical expert must be supported by substantial evidence. *See Honeysucker v. Bowen,* 649 F.Supp. 1155, 1158 (N.D.Ill.1986) (noting "[a]t least where the evidence fairly raises the question, a medical expert should evaluate it."). Thus, the court's review is limited to whether substantial evidence supported the ALJ's determination that the symptoms, signs, and laboratory findings in the record do not suggest that a judgment of equivalence may be reasonable.

█ It is not clear from the pleadings what combination of impairments the claimant believes would equate to a § 9.09A obesity condition. As discussed above, the right knee ailment manifested itself in April 1995

---

3. On July 16, 1992, claimant's alleged onset of disability, she did not meet the weight requirements for obesity. According to claimant's testimony she had lost 140 pounds prior to her on the job injury on July 16, 1992 and gained it all back between her injury and the date of the hearing. The first entry in the record of a qualifying weight of 294 pounds was March 23, 1994. Her weight continued to fluctuate thereafter.

and was resolved by the fall of 1995 with no permanent limitations resulting. The shoulder, neck, and arm complaints do not involve a weight bearing joint as required by 9.09A. The only other possibility is claimant's left lateral hip bursitis, mild sciatic irritability, and sacroiliitis with paravertebral spasm. Dr. Janovich listed chronic recurrent left lateral hip bursitis as the claimant's significant physical limitation in December 1995, (TR 272), which possibly could be considered as the basis for an equivalency finding for arthritic changes. The joint involved, the hip, is a weight bearing joint. Pain in the hip beginning March 23, 1994, and continuing through November 17, 1995 is clearly documented in the record, (TR 218, 220, 231, 235, 252, 254–256), but there is no suggestion in the record that there is any limitation on range of motion. In fact, Dr. St. Clair's December 1993 report, the only range of motion study in the record, reflects a normal range of motion for claimant's hips. Based on these facts and the fact that the claimant did not point to any record of limitation of motion associated with the hip, the court concludes that the ALJ's decision not to consult a medical expert on the issue of equivalence was supported by substantial evidence.

B. *The ALJ's use of the Medical–Vocational Guidelines or "Grid" to Determine Residual Functional Capacity.*

The claimant next argues that the ALJ committed legal error by applying the grid to determine residual functional capacity because the ALJ had already found in step two of the analysis that claimant suffered from severe nonexertional impairments.[4] Specifically, the ALJ found that the claimant suffered form borderline intellectual functioning, chronic depression and migraine headaches. (TR 14.)

Once the ALJ determined that the claimant's condition did not satisfy the Listing of Impairments criteria and that the claimant was not capable of returning to her past relevant work (steps three and four), the

final issue to be decided was the level of the claimant's residual functional capacity (RFC). Specifically, the ALJ had to determine whether the severity of the claimant's medically determinable impairment, or combination of impairments, prevented her from performing a significant number of jobs which would be consistent with her functional limitations, age, education, and work experience. It is a long standing judicial view that at this step the burden shifts to the Commissioner. *See Walker v. Bowen,* 834 F.2d 635 (7th Cir.1987). The testimony of a qualified vocational expert may be used to assist the ALJ in carrying this burden. This expert is one who is familiar with working conditions, job requirements and occupational characteristics as well as the personal attributes of the individual claimant. The other method by which the Commissioner can carry the burden of demonstrating the claimant's ability is through the use of the Medical–Vocational Guidelines or "grid." The grid exists to assist the fact finder in deciding whether the claimant is disabled by setting out the appropriate interaction between various factors such as age, education and work experience with whatever the ALJ determines to be the claimant's exertional limitations.[5] After the ALJ has made specific findings with respect to these four factors, he or she simply "plugs" these into the framework set out in the guidelines and the grid dictates a conclusion of "disabled" or "not disabled."

The use of the grid to help make the disability determination when a claimant presents with nonexertional limitations has been approved by the Sixth Circuit under certain circumstances. *See Cole v. Secretary,* 820 F.2d 768, 771–72 (6th Cir.1987); *Kirk v. Secretary of Health & Human Services,* 667 F.2d 524, 528 (6th Cir.1981). Specifically, if the fact finder decides that a claimant's nonexertional impairment does not significantly limit her ability to do a full range of work at a designated level, then the grid may be used. In other words, it is only when the alleged nonexertional impairment is severe

---

**4.** The claimant did not allege that the ALJ's conclusions in step five were not supported by substantial evidence.

**5.** Jobs are classified according to their physical exertional requirements: sedentary, light, medium, heavy or very heavy.

enough to prevent the claimant from performing a wide range of jobs at the designated level that the application of the grid is precluded. In such a case, the ALJ would have to rely on expert testimony to establish the claimant's ability to perform other work. *See Kirk v. Secretary,* 667 F.2d 524, 531 (6th Cir.1981).

In *Glass v. Shalala,* 43 F.3d 1392 (10th Cir.1994) the claimant, who allegedly suffered disabling pain, made a similar argument. The court in that case stated:

> Ms. Glass also maintains it was error to apply the grids. She is correct that the existence of disabling pain may make resort to the grids inappropriate. The grids may be used, however, where the ALJ finds, based on substantial evidence, that the nonexertional impairment does not affect residual functioning capacity. We have already held substantial record evidence supports the ALJ's decision to disregard Ms. Glass' testimony concerning the extent of her nonexertional impairments. Consequently, it was not error to apply the grids.

*Id.* at 1396. (internal citations omitted).

 Thus, it is plain from *Glass* and the holdings of the Sixth Circuit that it is not legal error to utilize the grid even though the claimant may have severe nonexertional impairments, so long as those impairments do not impose any significant limitations on the claimant's ability to perform a full range of work at the given exertional level. Here, the ALJ had determined that claimant's headaches, depression, and borderline intellectual functioning did not significantly limit her ability to perform a full range of sedentary work. Therefore, it was not error to use the grids.

The above quotation from *Glass* also makes clear that the initial determination that the claimant's nonexertional impairments do not significantly limit her ability must likewise be supported by substantial evidence. The court cannot find, however, that the claimant has made any allegation that this threshold determination was not supported by substantial evidence. Instead, the claimant has simply argued that it was

"legal error" to apply the "grids," and therefore this issue need not be addressed.

## RECOMMENDATION

Based on a review of the record, the Commissioner's decision and the relevant legal authorities, it is the recommendation of this court that the decision of the Commissioner be affirmed.